[No. 4437.]

PERCY McCREA *v.* ATTILA HARASZTHY ET AL.

ORDER OF PUBLICATION OF NOTICE BY PROBATE COURT.—If the statute fixes the number of days that a notice of the time of application to the Probate Court for probating a will and issuing letters testamentary shall be published, the order directing the publication of such notice need not direct how often the notice shall be published, if it requires the publication to be made according to the statute.

PROBATING WILLS.—If one only of two or more executors named in a will petitions for its admission to probate, and no citation is served on the others named as executors, and it does not appear that such others are residents of the county where the petition is filed and therefore are required to be cited, it will not be assumed, for the purpose of invalidating the proceedings admitting the will to probate, that such others were residents of the county where the petition was filed.

IDEM.—The question not decided, whether, on a petition by one of several, named as executors in a will, for its admission to probate, the failure to cite the others where they reside in the county, leaves the court without jurisdiction to probate it.

SIGNING MINUTES OF PROBATE COURT.—The statute of May 1, 1851, requiring the orders and decrees of the Probate Court to be entered at length in the minute-book, and to be signed by the judge, is directory merely, as it is entirely silent as to the consequences to follow from a failure of the judge to sign.

FINAL DISCHARGE OF EXECUTOR FROM HIS TRUST.—The allowance of the final account of an executor does not discharge him from his trust, nor is it a decree of distribution or the equivalent of such a decree. Until the entry of a decree discharging an executor from liability, he is not discharged from his trust.

Ejectment by Devisee Named in a Will.—A devisee named in a will cannot maintain ejectment for land devised to him therein until the final discharge of the executor from his trust, and a distribution of the estate.

Appeal from the District Court, Seventh Judicial District, County of Sonoma.

Ejectment to recover a tract of land near Sonoma, containing about one thousand acres, commenced May 12, 1869.  The defendants were severally in possession of parcels of the tract.  James D. Galbraith was the owner of an undivided one-half of the tract, and made a will, in which he devised an undivided one-half of his interest to his sister, Mrs. Wood, and the remaining undivided one-half to Tully McCrae, Alice McCrae, Percy McCrae, the plaintiff, and Walter McCrae, children of his sister.  Samuel B. Newman, of Natchez, Mississippi, J. C. Hayes, John Caperton, and Julius K. Rose, were nominated executors of the will.  The testator died in Natchez, in December, 1853, while on a visit to his relatives at that place.  He had resided in San Francisco, but the devisees resided in Natchez and have not lived in this State.  Julius K. Rose, one of the persons named as executor, renounced.  J. C. Hayes filed a petition for the probating of the will, and the issuing of letters testamentary to him, in the Probate Court of San Francisco, on the 20th day of July, 1854.  Caperton did not join in the petition, and was not served with a citation.  An order was made fixing Monday, the 31st day of July, for hearing the petition, and directing a notice to be published in the "Times and Transcript newspaper," "according to the statutes."  A citation was served on Rose.  The notice was published as required by the statute.  On the day noticed, the will was admitted to probate, and letters testamentary were issued to Hayes.  On the 11th day of October, 1855, Hayes filed a petition for the sale of the real estate.  On the 24th day of December, 1855, the Probate Court made an order for the sale of the real estate.  On the 28th of April, 1856, the executor sold the land, and William McCready and William H. Crowell became the purchasers, and the de-

fendants, by mesne conveyances, acquired their title. The devisees claimed that the sale made by the Probate Court was void, and one of them, Percy McCrea, brought this suit to determine the question. The defendants claimed that the plaintiff could not maintain the action because the executor had not been discharged from his trust. The court below rendered judgment for the defendants. The plaintiff appealed.

The other facts are stated in the opinion.

*John Wilson,* for the Appellant.

*Edward J. Pringle,* for the Respondent.

The plaintiff cannot recover because of the unclosed administration upon the estate of James Dill Galbraith, the ancestor, under whom he claims. (*Meeks* v. *Hahn,* 20 Cal. 620; *Chapman* v. *Hollister,* 42 Cal. 462; *Meeks* v. *Kirby,* 47 Cal. 168.)

By the Court:

1. The first question for consideration is as to whether the Probate Court had jurisdiction to admit the will of Galbraith to probate, and issue letters testamentary thereon to Hayes. The will, naming Hayes and others as executors, had come to the custody of the court, and Hayes had filed a petition in due form, praying that it be admitted to probate, and that letters testamentary issue thereon to himself. The court, on the 20th of July, 1854, by order duly entered on the minutes, fixed the 31st day of that month as the time for hearing the application, and directed notice thereof to be given by publication in a proper newspaper, designated in the order, according to the statutes. It is argued that the order was *void,* because it did not designate how often per week the publication should be made; that it did not mention the number of insertions of the notice to be made per week, in the newspaper designated. The order, as we have seen, directed the publication to be made according to the statutes. The statute (Acts 1851, p. 449, Sec. 13), provided in terms that the publication in such a case should

be not less than twice a week, and the order in this respect referring on its face to the statute, was substantially an order in the terms of the statute. We think, therefore, that the order was sufficient; and it appearing that the publication was duly made pursuant to the order and the provisions of the statute, to which it referred, the Probate Court, so far forth, had jurisdiction to entertain the petition.

2. It is further objected, however, that no service of a citation was effected upon Caperton, who was also named in the will as an executor, and who did not unite in the petition, nor in anywise become a party to the proceedings. But it is sufficient upon this point to say that it does not appear that Caperton was at the time a resident of the county of San Francisco, and that unless he was such a resident at that time no such service upon him was required. (Section 15.) The fact of his residence in the county of San Francisco at the time the proceedings in probate were had would not be inferred for the purpose of invalidating these proceedings, from the mere circumstance that he had been mentioned in the will itself as being then a resident of that county; and especially would this be so where, as here, for aught that appears, a great length of time may have elapsed since the publishing of the will and the institution of proceedings to admit it to probate—the date of the publication of the will by Galbraith not appearing in the record before us. It is proper to observe, however, that we have so far assumed, rather than decided, that the failure to cite Caperton, even had he been at the time a resident of the county of San Francisco, would have been jurisdictional in its consequences. It is not necessary in the view already expressed, to determine that question.

3. It is next urged that the order of July 20, 1854, entered at length in the minutes of the Probate Court, fixing a day for the hearing of the application to admit the will of Galbraith to probate, and directing notice thereof to be given by publication, was void, because the minutes were not signed by the judge of that court. And section two

hundred and eighty-seven of the act of May 1, 1851, is cited in support of this position. That section is as follows: "SECTION 287. All orders and decrees made by the Probate Court during its terms shall be entered at length in the minute-book of the court, and also all orders which the probate judge is empowered to make out of term time, and which, by this act, are especially required to be so entered. Upon the close of each term, the judge shall sign the minutes of the proceedings."

We think, however, that the statute, while unquestionably providing for the signing of the minutes, is directory merely. It is entirely silent as to the consequences to follow upon the failure of the judge to sign the minutes as therein provided, and in this respect it is essentially different from the statute of March 16, 1850, under consideration in *Wells* v. *Stout* (9 Cal. 497), relied upon by the appellant. That statute read as follows: "It shall be the duty of the clerk of the District Court to draw up each day's proceedings, at full length, and the same shall be publicly read in open court, and corrected when necessary. After which they shall be signed by the judge thereof; and no process or execution shall issue on any judgment or decree of the court until it has been so read and signed." It was accordingly held in that case that a sheriff's sale made by virtue of an execution issued upon a judgment not signed by the district judge was void. The statute of 1850 contained negative words, and forbade the enforcement of any judgment of the District Court until it had been first signed by the judge. But in the act of May 1, 1851, now under consideration, no such consequence, nor indeed any consequence whatever, is attached by the statute to the failure of the judge to sign the minutes of the Probate Court. The distinction between the two statutes in the respect indicated, is too obvious, upon settled rules, to require discussion. We think, therefore, that the proceedings of the Probate Court in question here, in admitting the will of Galbraith to probate, and issuing letters testamentary thereon to Hayes, were not invalid or void for lack of jurisdiction.

4. Nor have we been able to discover that Hayes has yet

been discharged of his trust. The statute of May 1, 1851, section two hundred and seventy-nine (substantially in this respect like the statute now in force), provides that when the estate has been fully administered, and it shall properly appear that the executor has paid all sums of money due from him, etc., "the court shall make a decree discharging him from all liability to be incurred thereafter." No such decree in the estate of Galbraith appears to have been yet made by the Probate Court. The mere allowance of the final account appearing to have been made, obviously is not the legal equivalent of such a decree. Such an account allowed does not even import all the conditions prescribed by the statute, as the prerequisites of a decree discharging the executor and terminating his trust. But if it did, the decree duly entered, would still be necessary for that purpose. Until the entry of such a decree, the trust still continues in contemplation of law, and the executor remains clothed with the duty and authority of his office. Nor is any decree of distribution shown to have been entered in the Probate Court. The allowance of the final account of the executor is not a decree of distribution, nor the legal equivalent of such a decree; and this for the same reasons already mentioned in reference to a decree in terms discharging the executor from his trust.

It results from these views that the plaintiff, being a devisee of Galbraith, cannot maintain this action. (*Meeks v. Kirby*, 47 Cal. 168, and cases there cited.)

Judgment and order denying a new trial affirmed.)