[L. A. No. 1660. In Bank.—August 13, 1907.]

# FARMERS AND MERCHANTS' BANK OF LOS ANGELES, Respondent, v. CITY OF LOS ANGELES, Appellant.

TAXES PAID UNDER PROTEST—LOS ANGELES CITY—CHARTER PROVISIONS —DEMAND FOR REPAYMENT—PLEADING.—Under sections 208, 209, 216, and 222 of the freeholders' charter of the city of Los Angeles, it is a necessary prerequisite to the maintenance of an action against the city for the recovery of taxes paid under protest that a previous demand therefor, as provided by such sections, be presented to the city council; and a complaint to recover such taxes which fails to allege the presentation of a demand is insufficient, in failing to state a cause of action.

ID.—SECTION 3819 OF POLITICAL CODE.—Conceding that section 3819 of the Political Code, relating to the recovery by suit of taxes paid under protest, although in terms limited to the matter of state and county taxes, is made applicable to the city of Los Angeles by section 46 of its charter, still it must be construed subject to the provisions of the charter requiring the presentation of claims and demands against the city.

ID.—CITY ORDINANCE FOR RECOVERY OF TAXES PAID.—An ordinance of the city, containing provisions practically the same as section 3819 of the Political Code for the recovery of taxes paid under protest, if it must be construed as authorizing suit for the recovery of such taxes without any prior presentation of a claim to the city council, would be void because in conflict with the charter provisions.

ID.—CITY NOT TRUSTEE FOR TAXES PAID UNDER PROTEST—RIGHT OF TAXPAYER.—Money paid to the city as taxes under protest becomes the property of the city, without being subject to any trust whatever, and an action to recover the same is in no sense an action to enforce a trust, in which a demand would be unnecessary. The taxpayers' right against the city after payment is only such as is conferred either by section 3819 of the Political Code or by the ordinance provision authorizing an action for the recovery of the amount of taxes paid upon a void assessment.

ID.—APPLICATION FOR REDUCTION OF ASSESSMENT.—The making by a taxpayer of an application for the reduction of an assessment to the city council sitting as a board of equalization, prior to the payment of the taxes under protest, is not the presentation of a demand for the repayment of such taxes within the meaning of the charter requirements.

ID.—ALLOWANCE OF CLAIM FOR TAXES PAID UNDER PROTEST.—The city council had jurisdiction to allow a claim for taxes paid under protest if properly presented, although the board of equalization had several

months before refused to reduce the assessment. The fact that a reduction of the assessment was refused does not conclusively establish that the city would not have allowed the claim, or render the presentation of a demand therefor unnecessary, on the ground that a demand would have been useless.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

W. B. Mathews, City Attorney, and Hartley Shaw, for Appellant.

Graves, O'Melveny & Shankland, and Jeff. Paul. Chandler, for Respondent.

THE COURT.—This is an action brought by plaintiff, a banking corporation, to recover from the city of Los Angeles the sum of $4,235.96, alleged to have been paid by plaintiff under protest for illegal taxes for the fiscal year 1902-1903. A general demurrer for want of facts sufficient to constitute a cause of action was interposed to the complaint and overruled. An answer denying certain allegations of the complaint having been filed, the cause was tried, and judgment went for plaintiff. Defendant appeals upon the judgment-roll.

It is contended that the complaint is fatally defective because it fails to aver that before the commencement of the action plaintiff presented any claim or demand for the amount sought to be recovered, or any portion thereof, to the city council of defendant.

The complaint of plaintiff contained no allegation whatever as to the presentation of any such claim or demand to the city council, or anything to show that the matter was in any way brought to the attention of that body before suit, except in so far as it was presented to it sitting and acting as a board of equalization on an application for the reduction of the assessment.

The freeholders' charter of the city contains the following provisions in the matter of claims and demands:—

"Sec. 208. All claims and demands whatever against the city of Los Angeles, except interest on bonds and bonds of the

funded debt, shall be paid only on demands as herein provided for.

"Sec. 209.   Said demands . . . shall be presented to the council on forms and blanks to be provided by the city clerk, and shall be referred to its committee on finance. The said committee shall, by indorsement thereon, approve or reject the same, in whole or in part.   The council shall then consider the said demands and the action of said committee thereon, and shall, if the same be just and legal, approve the same; or may, if it so determine, approve in part or reject the whole. . . .

"Sec. 216.   No payment can be made from the city treasury, or out of the public funds of said city, unless the same be specially authorized by law or this charter, nor unless the demand which is paid be audited as in this charter provided. . . .

"Sec. 222.   No suit shall be brought upon any claim for money or damages against the city of Los Angeles, . . . until a demand for the same has been presented as herein provided, and rejected in whole or in part. . . ."

Under provisions of law of this character, it has always been held in this state that the presentation of a demand in the manner provided was a necessary prerequisite to the maintenance of a suit against a public corporation to recover money, and that a complaint containing no such allegation fails to state a cause of action.   In *McCann* v. *Sierra Co.,* 7 Cal. 121, it was held in an action for damages for trespass that under a law providing that "no person shall sue a county in any case, for any demand, unless he or she shall first present his or her claim to the board of supervisors for allowance, . . ." it was essential to plaintiff's recovery that the complaint contain an averment of presentation of the claim.   The point was made in that case that the section only applied to actions *ex contractu,* but the court held it applicable in all cases, and held the intention of the legislature to have been to prevent the revenue of the county from being consumed in litigation, by providing that an opportunity of amicable adjustment should be first afforded to the county, before it could be charged with the costs of a suit.   In *People* v. *Supervisors,* 28 Cal. 429, it was declared that a claimant has no cause of action against a county for the recovery of money until

CLI Cal.—42

he has presented his claim or demand to the board of supervisors for allowance. In *Rhoda* v. *Alameda County,* 52 Cal. 350, an action for damages for injury to plaintiff's building, judgment went for plaintiff by default, and on appeal the judgment was reversed solely because there was, in the opinion of the court, no sufficient allegation of the presentation of a claim prior to suit. In *Bigelow* v. *Los Angeles,* 141 Cal. 503, [75 Pac. 111], it was declared that in order that a suit might be treated as one for damages it was absolutely necessary under the charter that a claim therefor should have been presented to the city council. In *Alden* v. *Alameda County,* 43 Cal. 270, the action was on a judgment, and there was no allegation in the complaint of the presentation of a claim to the board of supervisors. A demurrer for want of facts was sustained, and this court held that the statute prohibiting suit "in any case or for any demand, without first presenting the claim to the board, was sufficiently comprehensive to include a cause of action founded on a judgment against the county." It was here again said that the provision was intended to prevent the county from being harassed by needless and expensive litigation. In *Arbios* v. *County of San Bernardino,* 110 Cal. 553, [42 Pac. 1080], it was again said that statutes requiring the presentation of claims prior to suit are framed with the purpose of avoiding useless expense in litigation, and to give to the county ample opportunity to avoid such expense. These cases show that it is the policy of the law declared in such provisions that the public corporation shall always be given an opportunity to pay before being subjected to an action upon any money demand. They further show that a strict compliance with such conditions has always been insisted on by this court, and that they apply to all classes of claims not expressly excepted in the law itself.

While it is true, so far as we have discovered, that the question has never been discussed in connection with a claim for the recovery of taxes paid under protest, we can perceive no material difference between such a claim and claims of the character considered in some of the decisions above cited. Such claims are often settled and paid when presented, and the presumption is that they always will be so paid, if they are just. The policy of the law applies as well to them as to

other demands against a city, and the reasons for the rule when applied to such a claim are as cogent as when applied to any other claim. We find in the law no method by which the city can voluntarily refund taxes illegally collected, without the presentation of a claim therefor, and if these provisions of the charter are not applicable, it would follow that the city must in every case be subjected to the costs of a suit, even though the proper officers consider the claim a just and legal one, and are willing to pay the same.

It is doubtful whether section 3819 of the Political Code, relating to the recovery by suit of taxes paid under protest, is applicable to the city of Los Angeles. It is in terms limited to the matter of state and county taxes. Section 46 of the city charter, providing that "the mode and manner of collecting such municipal taxes, and enforcing such tax lien, and the proceedings thereafter, shall substantially be the same as the mode and manner at the time prescribed by law for the collection of state and county taxes in said county," does not necessarily make the provisions of section 3819 of the Political Code applicable. Although this section, enacted several years after the adoption of the Los Angeles charter, was placed in the chapter entitled "Collection of Property Taxes," it, strictly speaking, has nothing to do with the mode and manner of collecting taxes or enforcing the tax lien or with the "proceedings thereafter," within the meaning of those words in the above provision. But, assuming that the charter provision should be read as making it applicable, it must be construed subject to the provisions of the charter as to claims and demands against the city. Such a construction would require presentation of the claims before suit. A provision practically the same as section 3819 of the Political Code was contained in an ordinance adopted by the city council of Los Angeles. If we assume that the provision must be construed as authorizing suit without any prior presentation of the claim to the city council, the ordinance provision must necessarily be held void because in conflict with the superior charter provisions. We do not think, however, that it must be so construed. It may very reasonably be construed as simply giving a legal claim against the city, to be presented to the city council before suit in the same manner that all other claims are required to be presented.

It is contended that there was an involuntary trust against the city, rendering a demand unnecessary. We see no force in this contention. The money paid as taxes under protest became the property of the city, subject to no trust whatever. The taxpayer's right against the city in the matter was thenceforth only such as was conferred either by section 3819 of the Political Code or the ordinance provision authorizing an action for the recovery of the amount of taxes paid upon a void assessment. In no sense of the words is this an action to enforce a trust.

The making of the application for the reduction of the assessment by plaintiff to the city council sitting as a board of equalization, prior to the payment by it of the money sought to be recovered, was of course not the presentation of any claim or demand so far as the alleged cause of action here involved was concerned.

There is no force in the contention that the council could not have allowed the claim, because the action of the board of equalization in refusing to reduce the assessment was conclusive as to the validity of the assessment. As to matters concerning which the action of such a board is conclusive, there is no power of review anywhere, even in an action to recover the tax paid under protest, and plaintiff's contention in this regard would leave it without any remedy whatever.

It cannot be held that the making of a proper demand here would have been a vain and useless thing, and, therefore, was not required. We are satisfied that the city council had jurisdiction to allow the claim if properly presented. The fact that the board of equalization had several months before refused to reduce the assessment does not conclusively establish that the city would not have allowed the claim, but however that may be, the presentation of the claim or demand is, under the charter, a prerequisite to suit.

We can see no escape from the conclusion that the complaint, by reason of its failure to allege a presentation of a claim to the city council, must be held insufficient to support the judgment.

*The judgment is reversed and the cause remanded, with leave to plaintiff to amend its complaint within such time as may be allowed therefor by the trial court.*

McFARLAND, J., dissenting.—I dissent, and am of opinion that the judgment ought to be affirmed.

This is an action brought by plaintiff, a banking corporation, to recover from the city of Los Angeles the sum of $4,235.96 alleged to have been paid by plaintiff under protest for illegal taxes for the fiscal year 1902-1903. Judgment went for plaintiff, and from the judgment defendant appeals.

Defendant demurred to the complaint upon the sole ground that it does not state facts sufficient to constitute a cause of action. It did not demur upon any special ground, nor did it interpose any pleading in the nature of a plea in abatement. The general demurrer was overruled, and defendant filed an answer in which some of the material allegations of the complaint were denied. A jury was waived, and the court made findings covering all the issues. No motion for a new trial was made. There is no bill of exceptions or statement, and therefore there is no evidence before us, and no point as to any error committed at the trial. All the points made by appellant for a reversal arise upon the general demurrer, appellant contending that the complaint does not state a cause of action.

The material facts as alleged in the complaint and found by the court which are necessary to be here stated, and which must on this appeal be taken as true, are briefly these: In April, 1902, plaintiff gave to the city assessor of the city of Los Angeles a verified statement in due form of all the personal property which it owned, possessed, or controlled at twelve o'clock M. on the first Monday of March, 1902. This statement showed that all the money which plaintiff had on said first Monday was $200,492.70, and the court found that "said statement was true and correct, and the plaintiff did not have in its possession or under its control any other, further or different sum of money." But plaintiff, in addition to its general banking business, had, on adjoining premises, a safe-deposit department which was entirely distinct from its general banking business, and from other vaults in which it kept money received from its general depositors; that on said first Monday of March, 1902, the defendant, by its treasurer, had in vault No. 19 of said safe-deposit department the sum of $352,997.38 of the moneys belonging to the

city; that said moneys were a special deposit, and were not in any way commingled with other deposits in plaintiff's bank, but were kept separate and distinct from all other moneys; and the court finds that "said city money, $352,-997.38, was wholly and exclusively within the control of the said city of Los Angeles through its officer the said city treasurer, W. H. Workman." Nevertheless, the city assessor arbitrarily assessed the plaintiff, against the latter's will and protest, for the said $352,997.38, being the said city's money as aforesaid. The city tax on said sum of money was $4,235.96, the money involved in this action. The city council of defendant met as a board of equalization in August, 1902, and the plaintiff filed with them a verified petition for the correction of said assessment by reducing the amount of money assessed to plaintiff to the extent of said $352,997.38, and presented the facts relative thereto as above stated; but the board refused to make any reduction. Afterwards the tax-collector of defendant demanded of plaintiff the payment of the said $4,235.96 and threatened to levy, etc.; and on November 18, 1902,—a few days before said tax would have become delinquent,—plaintiff paid said taxes to the tax-collector, and at the same time left with him a written protest in due form, claiming that the assessment and levy made for said $352,997.38 was illegal and void, etc.

From the foregoing it is entirely clear that the plaintiff had, upon the real merits, a most just cause of action against the defendant. To allow the city to retain money paid by plaintiff as taxes on the city's own property would be to violate any admissible conception of what is right and just. Indeed, defendant makes no pretense of a defense on the merits, but defends only on the ground that the complaint is fatally defective.

The main contention of appellant on the general demurrer, and the only one that really calls for much discussion, is that the complaint is fatally defective because it fails to aver that before the commencement of the action respondent presented any claim or demand for the amount sought to be recovered to the city council of appellant, which demand, appellant contends, was made necessary by sections 208, 209, and 222 of the city charter. Section 208 is as follows: "All claims or demands whatever against the city of Los Angeles, except

interest coupons on bonds and bonds of the funded debt, shall be paid only on demands as herein provided for''; and section 209 provides that such demands shall be presented to the council and be referred to the committee on finance, which committee shall by indorsement thereon approve or reject the same in whole or in part, and the demand shall then go to the council for action. ''The council shall then consider the said demands and the action of said committee thereon, and shall, if the same be just and legal, approve the same, or may, if it so determine, approve in part or reject the whole.'' Section 222 provides that ''No suit shall be brought on any claim for money or damages against the city of Los Angeles . . . until a demand for the same has been presented as herein provided and rejected in whole or in part.'' And there is in the complaint in the case at bar no averment of the formal demand made in compliance with said section.

It is apparent that this defense, founded upon a want of averment of demand, is, in the extreme sense, technical; it seeks to avoid a just judgment by taking refuge behind a general provision of law not intended for such purpose. But while it is true that a technical defense cannot be ignored, and must be maintained, when it blocks the way of obtaining a judgment on a meritorious cause of action by an obstacle so complete that it cannot be surmounted, or circumvented, or in any manner evaded, still the general rule is,—as stated by Baldwin, J., in *Roland* v. *Kreyenhagen,* 18 Cal. 457,— that courts are justified in ''regarding mere technicalities as obstacles to be avoided, rather than as principles to which effect is to be given in derogation of substantial rights.'' A court will not maintain such a technicality unless there is no way of escaping it, unless it effectually closes every avenue through which the just judgment could be reached; and we do not think that the technical defense here under discussion is of that character.

Respondent makes numerous answers to appellant's contention,—as, for instance, that the point of want of averment of demand cannot be reached by a general demurrer, but should have been presented by special demurrer or plea in abatement; that an involuntary trust was created against the city which rendered a demand unnecessary; that the veri-

fied petition by respondent before the city council sitting as a board of equalization was in substance a sufficient demand; that after the completion of the assessment-book after equalization the respondent had no demand within the meaning of the said provision relating to presentation and demand; and that in the case at bar it amply appears that the demand here insisted on would have been a vain thing, and therefore not required. We think it just to counsel for respondent to mention the foregoing points made by them in their elaborate brief; but we do not consider it necessary to pass upon these points, because we think that another contention made by them must be maintained,—to wit, that the contention of appellant as to the demand is governed by section 3819 of the Political Code and by the ordinance of the city of Los Angeles designated as No. 3448, new series. Section 46 of the city charter provides that "the mode and manner of collecting such municipal taxes, and enforcing such tax lien, and the *proceedings thereafter,* shall substantially be the same as the mode and manner *at the time* prescribed by law for the collection of state and county taxes in said county." (The italics are ours.) And at the time of the occurrences under which the present litigation arose section 3819 of the Political Code, or such of it as is necessary to be here quoted, was as follows: "At any time after the assessment-book has been received by the tax-collector, and the taxes have become payable, the owner of any property assessed therein, who may claim that the assessment is void in whole or in part, may pay the same to the tax-collector under protest, which protest shall be in writing, . .. and when so paid under protest, the payment shall in no case be regarded as voluntary payment, and such owner may at any time within six months after such payment bring an action against the county, in the superior court, to recover back the tax so paid under protest; and if it shall be adjudged that the assessment, or the part thereof referred to in the protest, was void on the ground specified in the protest, judgment shall be entered against such county therefor." While section 3819 of the Political Code was enacted subsequently to the adoption of the said section 46 of the charter, yet the latter evidently refers to the state law in force "at the time" of any payment of taxes under protest. And we are also satisfied that the language

"mode and manner of collecting such municipal taxes," and "the proceedings thereafter," cover the whole scheme of taxation and include the refunding of taxes illegally collected. But substantially the same provision is found in section 55 of the said ordinance of the city, No. 2848. That section is as follows: "At any time after the assessment-book has been received by the city tax and license collector and the taxes have become payable, the owner of any property assessed therein who may claim that the assessment is void in whole or in part may pay the same to the city tax and license collector under protest, which protest shall be in writing and shall specify whether the whole assessment is claimed to be void, or if a part only, what portion, and in either case the grounds upon which such claim is founded, and when so paid under protest the payment shall in no case be regarded as voluntary, and such owner may at any time within six months after such payment bring an action against the city in any court of competent jurisdiction to recover back the taxes so paid under protest, and if it shall be the judgment that the assessment on the part thereof referred to in the protest, was void on the ground specified in the protest, judgment shall be entered against the city therefor." Whether or not the right of a party to get back illegal taxes paid under protest could, in the absence of other legislation on the subject, be properly brought within the general category of "claims and demands," need not be here discussed. The ordinance above quoted and section 3819 of the Political Code deal expressly with the exceptional matter of taxes paid under protest, and afford an independent remedy. There is no provision for a demand, the only restriction being that the action must be commenced within six months "after such payment." The protest gives the defendant full notice of the character and amount of the claim. And a further demand would be of no benefit. This view is fully supported by authorities cited by respondent, and particularly by the case of *Western Ranches v. Custer County*, 89 Fed. 577. That was an action to recover taxes paid under protest; and "the defendant asks judgment upon the ground that the complaint does not state a cause of action, in this: that it does not appear that the plaintiff ever presented his claim to the board of county commissioners of Custer County for allowance, as

required, it is claimed, by the statute law of Montana, before an action could be maintained upon the same." But a statute of Montana provided that in all cases of a levy of taxes which is deemed unlawful by the party whose property is taxed, such party may pay the same under protest, and may bring an action to recover back the amount so paid, and that if it be determined that the tax so paid was illegal may recover a judgment for the amount. The court held that this statute gave a special remedy as to taxes paid under protest, and that "a condition not named in the statute is not required"; and the judge who delivered the opinion said: "For these reasons, I hold that there was no necessity for presenting this claim of plaintiff to the board of county commissioners of Custer County for allowance before plaintiff could maintain this action. The tax being an illegal one under the facts set forth in the answer, and paid under protest, the plaintiff was entitled to have the same refunded to him. The complaint under the statute cited above stated a cause of action, and it was not necessary that it should be shown that there was any demand upon the county commissioners for a refunding of the same."

The contention of the appellant that the passage of said ordinance by the city council relative to the repayment of taxes under protest was *ultra vires* and void is not maintainable. The city had full power over the assessment and collection of municipal taxes, and such power included the manner of collecting them under protest. The authority to refund is clearly an incident to the power to collect. The provision as to paying under protest is a salutary one and beneficial to both parties; if the protested tax is finally held to be good the municipality is not retarded in the collection of its revenue, and if it is held to be illegal the protestant has a remedy without running the hazard of losing his property by a refusal to pay in the first instance.

There is no merit in the contention that the taxes sought to be recovered were not paid under duress, and that the payment was therefore voluntary. The common-law rule as to distress of person or property does not apply to a statute expressly giving the right to pay under protest. (*Stewart v. County of Alameda,* 142 Cal. 660, 662, 663, [76 Pac. 481], and cases there cited; *Western Ranches* v. *Custer County,*

89 Fed. 577.)　There are no other points calling for special notice.

The judgment appealed from should be affirmed.

Henshaw, J., and Lorigan, J., concurred.