[Civ. No. 5844.   Fourth Dist.   Nov. 25, 1958.]

GHEEN R. ABBOTT et al., Plaintiffs and Appellants, v. CITY OF SAN DIEGO et al., Defendants and Appellants.

[Civ. No. 5845.   Fourth Dist.   Nov. 25, 1958.]

GEORGE AGNEW et al., Plaintiffs and Appellants, v. CITY OF SAN DIEGO et al., Defendants and Appellants.

[Civ. No. 5846.   Fourth Dist.   Nov. 25, 1958.]

ANGELINE ARMSTRONG et al., Plaintiffs and Appellants, v. CITY OF SAN DIEGO et al., Defendants and Appellants.

512

Kenneth Sperry for Plaintiffs and Appellants.

J. F. DuPaul, City Attorney, and Higgs, Fletcher & Mack for Defendants and Appellants.

COUGHLIN, J. pro tem.*—These three cases involve actions by retired firemen and policemen, and the widows of deceased retired firemen and policemen, to recover an alleged balance due on pension payments and for declaration of pension rights. In the Abbott case—*Gheen Abbott et al. v. City of San Diego et al.*—the plaintiffs are retired firemen; in the Agnew case—*George Agnew et al. v. City of San Diego et al.*—the plaintiffs are retired policemen; and in the Armstrong case—*Angeline Armstrong et al. v. City of San Diego et al.*—the plaintiffs are personal representatives of deceased firemen and policemen. All of these firemen and policemen had been employed by, and performed substantial services for the city of San Diego during the period of time when applicable laws provided for monthly pension payments on a fluctuating basis; the amounts to be paid depended upon the salary currently paid to active employees of the rank held by the pensioner at the time of his retirement.

*Assigned by Chairman of Judicial Council.

In 1923, by charter amendments (Stats. 1923, pp. 1581, 1588) the city of San Diego adopted a pension plan for retired firemen and policemen; provided for the payment into pension funds of 1 per cent of the employees' wages together with other sums from other sources, including a payment from the general fund of the city of such "sum each year as may be required for the maintenance of said Funds"; directed that a retired employee with 20 years of service should be paid "a yearly compensation equal to one-half the amount attached to the rank held by him for one year or more previous to the time of his retirement"; and made provisions for an employee disabled in the line of duty.

In 1931, the city adopted a new charter which included a pension program providing for the payment of pensions on a fluctuating basis to both retired and disabled employees; it was expressly stated that "all pensioners shall have their pensions increased or decreased to meet the prevailing scale of salary . . ."; payments from salary into the pension funds were increased to 2 per cent; other changes were made but, in the main, the plan adopted in 1923 was continued in force. (Stats. 1931, pp. 2838, 2917, 2920, 2923, 2926.)

In 1941, the charter was amended by providing that the pension paid to policemen would be in a fixed amount based on the average salary received during the five-year period prior to retirement. (Stats. 1941, pp. 3429, 3447.) In 1947, by charter amendment, a revised program was adopted; the fixed payment plan was extended to pensions payable to firemen as well as to policemen; a maximum pension of $200 per month was established; and the salary contribution by employees was raised to 8 per cent. (Stats. 1947, pp. 3578, 3580.) In 1955, an enabling amendment to the charter provided for the transfer of firemen and policemen employed on June 30, 1946, into the City Employees' Retirement System; placed a maximum on their contributions; fixed the time for retirement; prescribed minimum and maximum retirement allowances; and made administrative changes. (Stats. 1955, p. 4049.) This retirement system provided for the payment of compensation on a fixed formula basis. The 1955 amendment expressly provided that it should not be construed so as to affect the vested rights of retired firemen or policemen. All but seven of the plaintiffs retired before the effective date of this amendment, and these seven retired within a matter of a few months thereafter.

The firemen in these cases were in the employ of the city prior to 1947 and the policemen prior to 1941; the firemen and policemen retired, respectively, after 1947 and 1941; in most instances they retired after 20 years of service; all of them attained retirement status in accord with governing laws and regulations; and all of them have been paid pensions monthly on a fixed formula basis.

On varying dates in April and May, 1956, in compliance with a charter provision, the plaintiffs filed with the city claims for the difference between the pension payments made under the fixed formula and the payments which would have been made under the fluctuating formula; the charter provides that a claim for money due from the city shall be presented within 90 days after the last item thereof has accrued; the difference between the payments under the two formulae was substantial; the amounts claimed were limited to payments due within the three-year period immediately prior to filing; the claims were filed with the auditor and controller of the city and the board of administration of the city's retirement system; payment was denied.

Thereafter, the plaintiffs brought these actions. The trial court determined that they were entitled to receive pension payments under the fluctuating formula and awarded judgment accordingly, but limited recovery to those monthly payments accruing during the 90-day period prior to the filing of said claims and since said time, but refused to allow interest from the date of accrual as requested by plaintiffs.

All parties appeal from the judgment; the defendants from those portions in favor of the plaintiffs; and the plaintiffs from those portions in favor of the defendants.

The defendants contend the trial court erred in holding the charter amendments of 1941 and 1947 were not applicable to a determination of the amount of plaintiffs' pension payments; in applying the fluctuating rather than the fixed formula to such determination; and in finding against their defenses that these actions are barred by laches and the statute of limitations.

The plaintiffs contend that the trial court erred in refusing recovery of monthly payments accruing at a time more than ninety days prior to the filing of their claims with the city; in refusing to allow interest from date of accrual on unpaid pension benefits accruing since September 7, 1955, being the date when section 3287 of the Civil Code was amended; and in failing to more clearly define the future

pension rights of a widow of any plaintiff-pensioner in the event of his death.

■ The pension provisions of a city charter are an indispensable part of the contract of employment between a city and its employees, creating a right to pension benefits as an integral part of compensation payable under such contract, which vests upon acceptance of employment. (*Kern* v. *City of Long Beach*, 29 Cal.2d 848, 852 [179 P.2d 799] ; *French* v. *French*, 17 Cal.2d 775, 777 [112 P.2d 235, 134 A.L.R. 366] ; *Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d 575, 579 [59 P.2d 104].) ■ "This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent changes in the law." (*Wallace* v. *City of Fresno*, 42 Cal.2d 180, 183 [265 P.2d 884].) ■ However, "vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system," providing such modifications are reasonable. (*Allen* v. *City of Long Beach*, 45 Cal.2d 128, 131 [287 P.2d 765].) ■ "To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (*Allen* v. *City of Long Beach*, 45 Cal.2d 128, 131 [287 P.2d 765].) ■■ ". . . it is advantage or disadvantage to the particular employees whose own contractual pension rights, already earned, are involved which are the criteria by which modifications to pension plans must be measured" (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 449 [326 P.2d 484]) ; and "the substitution of a fixed for a fluctuating pension is not permissible unless accompanied by commensurate benefits." (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 454 [326 P.2d 484].)

The firemen and policemen in the cases at bar had earned vested rights to retirement benefits under charter provisions, providing for pensions based on a fluctuating formula, which were in force from 1923 until amended in 1941 and 1947. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484] ; *Allen* v. *City of Long Beach*, 45 Cal.2d 128 [287 P.2d 765] ; *Chapin* v. *City Commission*, 149 Cal.App.2d 40 [307 P.2d 657] ; *Glaeser* v. *City of Berkeley*, 148 Cal.App.2d 614

[307 P.2d 61] ; *Cochran v. City of Long Beach*, 139 Cal.App. 2d 282 [293 P.2d 839].)

In support of their contention that the 1941 and 1947 amendments were reasonable and, therefore, control a determination of the pension amounts payable in these cases, the defendants offer the statutory history showing a continual expansion of benefits under the city's pension plan from 1911 to date.

Prior to 1941, these favorable changes included an increase in benefits in case of death or disability, and for widows and dependent children; lowering of age requirements; enlarging participation in administration of the funds; and relaxing the provisions respecting residence and grounds for discharge.

The benefits conferred under a pension system by changes which are made from time to time prior to the adoption of an amendment imposing a detriment "have no bearing upon the reasonableness" of the detriment so imposed (*Abbott v. City of Los Angeles*, 50 Cal.2d 438, 449 [326 P.2d 484]); such benefits become a part of the vested rights of the employees when conferred.

The 1941 amendment changed the pension of policemen from a fluctuating to a fixed amount; no offsetting advantages were included.

In 1943 and 1945 modifications allegedly beneficial to the employees consisted in the elimination of a provision that the council should cease its contributions when the funds reached $1,000 per member—however, the council was required to maintain the solvency of the funds at all times; increasing representation on the boards of trustees; and requiring consent of the city manager to the involuntary retirement of an employee. These were insignificant advantages when compared with the disadvantages resulting from the change providing for a fixed rather than a fluctuating type of pension. [9] Moreover, "benefits subsequently obtained by other employees cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued." (*Abbott v. City of Los Angeles*, 50 Cal.2d 438, 453 [326 P.2d 484].)

The 1947 amendment revised the pension program for both policemen and firemen; extended the fixed formula to the latter; and increased contributions from 6 per cent to 8 per cent on salaries up to $400 per month, all of which were disadvantages, but made other changes which, it is claimed, constitute advantages; more elected representation on the board of trustees was afforded to the members; limitations on the

investment of funds were removed; contributions by employees ceased when they became eligible for retirement, and upon satisfactory evidence of disability the board was required to retire them; contributions by a member ineligible to retire who left his employment but died outside the line of duty were to be refunded; by definition, benefits on account of death were extended; provisions respecting termination of employment for various causes were modified or deleted; and policemen could not be removed except for specified causes after 15 years of service; were entitled to compensation for services if recalled to duty after retirement and, in the event of disability were given a pension on a fluctuating rather than a fixed basis, with a $200 per month maximum. The advantages to the individual firemen and policemen in this case attributable to the foregoing beneficial changes in the 1947 amendment, as a matter of law, are not commensurate with the disadvantages incident to the change from a fluctuating to a fixed formula type of pension; most of the plaintiffs had served 17 years, or more, as members of their respective departments; no present actual benefit to any of these individuals appears; many of the changes were concerned with procedural and administrative improvements in the pension program as a whole; and most of the alleged benefits had no factual relation to the plaintiffs or their status. Moreover, the increase in contributions was an offsetting detriment.

Although many of the defendants' arguments respecting the reasonableness of the changes from a fluctuating to a fixed formula, effected by the 1941 and 1947 amendments, have been considered and rejected in *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484], they contend that the cases at bar are distinguishable from the cited case because the change in question was necessary to make the city's pension program actuarially solvent and economically sound. This conclusion is based upon an actuarial study and report. It is argued that the reasons for this change bring these cases within the rule of *Kern* v. *City of Long Beach*, 29 Cal.2d 848, 855 [179 P.2d 799], and *Allen* v. *City of Long Beach*, 45 Cal. 2d 128 [287 P.2d 765], which recognizes the authority to change pension benefits, even though rights have vested, in order to "maintain the integrity of the system." This argument neglects consideration of the requirement that any such change must be reasonable and must be related to the integrity of the system as applied to the vested rights under consideration. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.

520

2d 484] ; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 133 [287 P.2d 765] ; *Cochran* v. *City of Long Beach,* 139 Cal.App.2d 282 [293 P.2d 839].)  There is no showing in the instant cases that the amendments under consideration ''bear any material relation to the integrity or successful operation or to the preservation or protection of the *pension program applicable to these plaintiffs.*'' (Italics ours.)  (*Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 455 [326 P.2d 484].)  At all times since 1923, the city charter required the council to pay into the pension funds yearly such sum as was necessary to maintain them.  (Stats. 1923, p. 1590, § 2½, subdivision b (3) ; Stats. 1923, p. 1595, § 2, subdivision b (4) ; Stats. 1931, p. 2919, § 158, subdivision (d) ; Stats. 1931, p. 2926, § 180, subdivision (d) ; Stats. 1947, p. 3583, § 158, subdivision 1 (b).)  The financial integrity of the pension system under which the plaintiffs had earned a vested right to a pension based on a fluctuating formula was guaranteed by the city, and adequately secured by its taxing power.

For reasons obviously apparent from what has been stated heretofore, none of the benefits conferred by the 1955 amendment bear upon the reasonableness of the prior changes which were detrimental to vested pension rights.

The conclusion of the trial court that the 1941, 1947 and 1955 charter amendments are not applicable to a determination of the amount of plaintiffs' pension payments was correct.

In each of the cases before this court, the plaintiffs alleged two causes of action; one sought a declaratory judgment respecting their pension rights; the other a money judgment for the unpaid portion of their pensions, based on the prescribed fluctuating formula, which had accrued during the three-year period prior to the time they filed their claims.  The defendants, as separate defenses, alleged that these causes of action were barred by laches and the statute of limitations—sections 312, 338, subdivision (1) and 338, subdivision (3) of the Code of Civil Procedure.

On appeal, the defendants contend that ''the trial court erred in finding against the affirmative defense of appellants that all of the respondents' claims were barred by laches'' and ''in overruling the appellants' affirmative defense that all of respondents' claims were barred by sections 312 and 338 of the Code of Civil Procedure . . .'' The trial court found that the defendants knew of the amendments to the pension system but ''did not know and had no means of anticipating the decisions that would be handed down by the appellate courts of the

State of California thereafter relative to pension systems and relative to the vested rights accruing thereunder''; that claims for the difference in any pension payments accruing more than 90 days prior to the presentation of claims to the city were barred; and ''that said claims are further barred by the provisions of sections 312 and 338, subdivisions 1 and 3 of the Code of Civil Procedure . . .'' However, the court concluded that the plaintiffs were entitled to recover ''such differences of amount as accrued subsequent to 90 days prior to the filing of such claims.'' Judgment was entered accordingly. This judgment, as heretofore noted, also declared the 1941 and 1947 charter amendments inapplicable to plaintiffs and adjudged their right to future pension payments based on the fluctuating formula prescribed by the charter provisions in force prior to said amendments.

Although the record is confusing, it is apparent that the plaintiffs were not denied recovery on any cause of action, either because of laches or the statute of limitations. This was proper.

These actions were commenced in May and June of 1956. The plaintiffs retired at varying dates between 1941 and 1956, so the same period of delay is not chargeable against each of them. There is neither pleading nor proof of injury occasioned by any such delay. Instead of sustaining injury the city actually has gained, to the extent that past due payments have become barred by the three-year statute of limitations. The causes of action seeking recovery of the balance due on pension payments are actions at law. These facts foreclose application of the doctrine of laches in these cases. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 458-459 [326 P.2d 484].) It is argued that, in reliance upon the belief that the charter amendments were valid, the city has appropriated money to make the pension funds actuarially sound and has extended new benefits to policemen and firemen; and that the plaintiffs' acceptance of pension benefits in the amounts prescribed by said amendments induced the defendants to believe that they were satisfied with such benefits. Similar arguments were advanced and found wanting in *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 460-461 [326 P.2d 484].

Contrary to defendants' contention, the statute of limitations is not a bar to plaintiffs' recovery of the balance due on the monthly pension benefits payable within the three-year period prior to the commencement of suit, or for a judg-

ment declaring their pension rights in the future. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 462-463 [326 P.2d 484].) In urging the statute of limitations as a bar the defendants placed the plaintiffs in three classes, i.e., (1) all plaintiffs; (2) plaintiffs who retired more than three years prior to commencement of these actions; and (3) plaintiffs who filed claims with the city in April, 1950 for the difference between the pensions actually paid before that time and the pensions which should have been paid, which claims were rejected and no suit was filed thereon. The present actions do not involve any of these prior claims which were rejected in 1950. The rules governing the application of the statute of limitations to the actions under consideration apply in like manner to each of the foregoing classes, i.e., a cause of action for the unpaid portion of a monthly pension payment accrues when that monthly pension payment is due.

The contentions made by the defendants in support of their appeals are not well taken.

The plaintiffs claim that the trial court erred in holding that the city charter barred recovery of unpaid pension payments accruing more than 90 days before they filed their claims with the city.

It is settled that a public corporation may require the presentation of a claim on a demand against it in a prescribed manner, to a designated officer or governmental agency, within a specified time after accrual, as a condition precedent to action thereon. (*McCann* v. *Sierra County*, 7 Cal. 121; *Arbios* v. *County of San Bernardino*, 110 Cal. 553 [42 P. 1080]; *Farmers etc. Bank* v. *City of Los Angeles*, 151 Cal. 655 [91 P. 795]; *Geimann* v. *Board of Police Commrs.*, 158 Cal. 748 [112 P. 553]; *Dryden* v. *Board of Pension Commrs.*, 6 Cal.2d 575, 580 [59 P.2d 104]; *Brown* v. *Board of Police Commrs.*, 2 Cal.App.2d 245, 251 [37 P.2d 737].)

In April and May of 1956, the plaintiffs filed claims with the auditor and controller of the city, as well as with the board of administration of its city employees' retirement system, setting forth their demand for the unpaid pension benefits which became due during the three-year period immediately prior thereto. At the time of such presentation pertinent parts of section 110 of the Charter of the City of San Diego provided as follows:

"Whenever it is claimed that The City of San Diego is obligated to pay money to any person because of contract or by virtue of operation of law, a demand or claim for such money

shall be presented in writing and filed with the Auditor and Controller of The City of San Diego within ninety (90) days after the last item of the account or claim has accrued . . .

"The time limit of ninety (90) days shall not begin to run against a claimant whose claim or demand for money due is because of operation of law until such claimant shall have actual notice of the existence of such claim." (Stats. 1953, p. 4005.)

Compliance with this charter provision requires the filing of a claim for recovery of the unpaid portion of any monthly pension payment within 90 days after said payment becomes due. (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 463-464 [326 P.2d 484].) Grouping a number of claims for unpaid monthly pension payments into one demand does not make each of them an "item" in an "account or claim" within the charter provision so as to extend the time for presentation to 90 days after the last payment.

*In Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 463-465 [326 P.2d 484], the plaintiff pensioners were permitted to "recover only those past-due payments which accrued within six months prior to the times they presented claims therefor," because of a charter provision that *"No suit shall be brought* on any claim for money or damages against the City of Los Angeles . . . until a demand for the same has been presented, *as herein provided,"* and that all claims, other than for damages, "shall be presented within six (6) months after the last item of the account or claim accrued." (Stats. 1927, p. 2014, § 376.) (Italics ours.)

In barring actions on nonpresented claims the Los Angeles Charter provision differs from the San Diego Charter provision under consideration, i.e., section 110, in that the latter invokes no penalty for failure to comply. This is a fact of significant importance because section 110 of the San Diego Charter, as originally enacted in 1931 (Stats. 1931, p. 2904), and as amended in 1939 (Stats. 1939, p. 3175) specifically provided that, *"No suit shall be brought* on any claim for money or damages against The City of San Diego or any officer or commission of the City until a demand for the same has been presented to the Auditor and Controller and rejected in whole or in part by the Council. If rejected in part, suit may be brought to recover the whole." Whereas, by an amendment to that section in 1949 (Stats. 1949, p. 3206) these provisions were deleted, and were not reinstated by a further

amendment in 1953, resulting in the present status of the section. (Stats. 1953, p. 4005.)

Some purpose must be attributed to the action of the electorate in deleting the provisions of the claim statute barring "suit" on a non-presented claim. The only intention ascribable to such action is that a "suit" on a claim against the city is not barred by failure to file it as directed by section 110 of the charter. ■ In *People* v. *Valentine,* 28 Cal.2d 121, 142 [169 P.2d 1], the court said:

"It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law. (*Southern Pacific Co.* v. *McColgan* (1945), 68 Cal.App.2d 48, 54-55 [156 P.2d 81].) It has been repeatedly declared that where changes have been introduced by amendment it is not to be assumed that they were without design and, further, that by substantially amending a statute the Legislature demonstrates an intent to change the preexisting law."

■ These principles of law apply to the charter amendments of section 110.

As presently constituted the Charter of San Diego, in the light of its history, requires compliance with section 110 as a condition precedent only to payment by warrant on the city treasury. (Stats. 1931, p. 2892, §§ 82-83.) In other respects the section is directory only. (*McCrea* v. *Haraszthy,* 51 Cal. 146, 150; *Cake* v. *City of Los Angeles,* 164 Cal. 705, 709-710 [130 P. 723].) Failure to comply therewith did not bar the present actions.

■ The plaintiffs contend that they are entitled to interest on their claims from date of accrual, pursuant to section 3287 of the Civil Code. The provisions of that section do not apply to awards against municipal corporations. (*Los Angeles Dredging Co.* v. *Long Beach,* 210 Cal. 348, 362 [291 P. 839, 71 A.L.R. 161] ; *Imperiale* v. *City & County of San Francisco,* 128 Cal.App.2d 277, 282 [275 P.2d 569] ; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 467-468 [326 P.2d 484] ; *Hafey* v. *City of Berkeley,* 163 Cal.App.2d 474, 479 [329 P.2d 711].) The decision of the trial court disallowing interest before judgment was proper.

■ The plaintiffs in the cases involving retired living firemen and policemen further complain that the trial court failed to adequately declare their rights with respect to pension benefits payable after death to their widows, or other relatives. A controversy between the parties in regard to this

matter was placed in issue and a declaratory judgment requested. The trial court determined that the charter amendments of 1941 and 1947 did not apply "to pension payments hereafter to become due and owing to the plaintiffs . . ." The rights of plaintiffs with respect to payments to their widows or other relatives, were not declared. The 1931 Charter of San Diego provided that upon the death of a pensioner "one-third ($\frac{1}{3}$) of the amount of his annual salary" shall be paid to his widow, until she remarries, not to exceed $75 per month; and also made alternative provisions for his children and other relatives. (Sections 162b and 184b—Stats. 1931, pp. 2920, 2926.) The 1947 charter amendment makes no provision for widows or relatives other than as may be provided in an optional payment plan adopted by the board of trustees of the retirement system. The optional plan would require the member to accept a smaller pension during his lifetime.

The "pension provisions for widows and children which are in effect during the period of the husband's employment are considered to be an element of his contractual compensation and earned by him." (*Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 454-455 [326 P.2d 484]; *Packer* v. *Board of Retirement*, 35 Cal.2d 212, 215 [217 P.2d 660]; *English* v. *City of Long Beach*, 126 Cal.App.2d 414, 416 [272 P.2d 875]; *Combs* v. *City of Long Beach*, 126 Cal.App.2d 841 [272 P.2d 880]; *Malone* v. *City of Los Angeles*, 126 Cal.App. 2d 447, 451 [272 P.2d 796].) The plaintiffs are entitled to have the full extent of their pension rights declared. Both the pension benefits payable after death to their widows or other relatives, as well as the amount of pension payments payable to themselves during their lifetimes are part of an existing controversy. "It is the duty of the court hearing an action for declaratory relief to make a complete determination of the controversy." (*Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 204 [318 P.2d 94].)

From what has been stated heretofore, it is apparent that the plaintiffs' rights to pension benefits for their widows, or other relatives, are determined by the 1931 charter provisions and not by the 1947 charter amendments. Judgment should have been entered accordingly.

The trial court was correct in declaring that the 1941 and 1947 amendments to the Charter of the City of San Diego are not applicable to a determination of the amount of plain-

tiffs' pension payments, and in making an award in favor of the plaintiffs and against the defendants in accordance with the fluctuating formula prescribed by the pension provisions of said charter in force prior to said amendments, without interest. Likewise, that court was correct in disregarding the 1955 charter amendments.

However, the trial court erred in limiting the recovery by plaintiffs respecting the unpaid portion of past-due pension payments to those which accrued during the 90-day period prior to the filing of their claims with the auditor and controller of the city, and in failing to adjudicate the controversy respecting pension benefits to widows, or other relatives, of living plaintiff pensioners upon death of the latter. Because of these errors the judgments are reversed and, following the pattern set forth in *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438, 468 [326 P.2d 484], the trial court is directed to enter judgments in favor of the plaintiffs and against the defendants in accord with the conclusions declared in the foregoing opinion of this court; to award plaintiffs the unpaid portion of their pension payments which accrued during the three-year period immediately prior to the commencement of these actions, as well as those which have accrued since said commencement; to declare the pension rights of plaintiffs in accord with the declaration set forth in the findings and judgment now before this court, and by adding a declaration of said rights respecting pension benefits payable to the widows, or other relatives, of the living plaintiff pensioners upon their death; to enter said judgments upon the present record if the trial court finds that it can do so, and, if not, then to take such further evidence as may be necessary to compute the amounts due to each plaintiff, to make such computations, and thereupon to enter judgments accordingly. Plaintiffs will recover costs on appeal.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied December 23, 1958, and the petition of defendants and appellants for a hearing by the Supreme Court was denied January 21, 1959.