[S. F. No. 15525. In Bank.—April 3, 1936.]

NORA CASSERLY, Appellant, v. CITY OF OAKLAND (a Municipal Corporation) et al., Respondents.

[S. F. No. 15526. In Bank.—April 3, 1936.]

A. E. ERNY, Appellant, v. CITY OF OAKLAND (a Municipal Corporation) et al., Respondents.

[S. F. No. 15527. In Bank.—April 3, 1936.]

J. J. SHERRY, Appellant, v. CITY OF OAKLAND (a Municipal Corporation) et al., Respondents.

Decoto & St. Sure and John D. Martin for Appellants.

C. Stanley Wood and F. Bert Fernhoff, City Attorneys, and John W. Collier, Assistant City Attorney, for Respondents.

THE COURT.—The question involved in each of these three cases is, to all intents and purposes, the same. In the

first case, the plaintiff, Nora Casserly, who is the widow of William Casserly, a member for several years prior to his death on December 12, 1930, of the Oakland fire department, filed her petition in the superior court for a peremptory writ of *mandamus* against the respondents, compelling them to pay her the full amount of pension allowed to her August 9, 1932, without reduction therefrom by reason of the ordinance hereafter to be mentioned. At the time of William Casserly's death, he held the rank of hoseman and was receiving the sum of $2,400 per annum. His widow was allowed a pension of $1200 per annum. The trial court declined to issue the writ and Nora Casserly prosecutes this appeal.

A. E. Erny also appeals in the second case from a similar ruling. He was retired on June 8, 1933, for disability resulting from injuries received in the performance of his duties as a member of the Oakland police department. For a year prior thereto, he had held the rank of patrolman and was awarded as a pension the sum of $1200 per annum, or one half the salary received by him as a patrolman.

J. J. Sherry was retired from the Oakland police department, which he had served for thirty-six years, on May 27, 1932, because of his age, under a pertinent provision of the Oakland charter. He had held the rank of sergeant for more than a year prior to retirement, at a salary of $220 a month, and was accordingly allowed a pension of $110 monthly. He appeals from a like order in the third case.

In all cases the charter provided that the pension to be paid should be "equal to one half of the salary attached to the rank held", with this difference. In the case of officers killed in the performance of their duties, such as William Casserly, it was the rank held by him at the time of his death, while, in the other two cases, it was the rank held by them for a year prior to retirement which measured the pension.

In July, 1933, certain amendments to sections 91 and 97 of the Oakland charter became effective, which, in substance, authorized the city council, when it found by an affirmative vote of not less than six members thereof, that an economic emergency confronted the city government, due to extraordinary conditions beyond its control, to provide for a reduction of not to exceed ten per cent of the annual salaries which otherwise were to be paid by the provisions of the charter. Pursuant to this authorization, the city council adopted an

ordinance on July 31, 1933, reducing the salaries of the police and fire departments. Subsequently, the Board of Trustees of the Firemen's Relief & Pension Fund and the Board of Trustees of the Police Pension Fund reduced all pensions, including these appellants', to correspond with reductions in salaries. The charter also provides, with respect to both the police and the fire departments, that an amount equal to 5 per cent of the salary paid to an officer should be deducted from his salary and paid into the pension fund of that department to which he belongs, and that the city shall contribute the balance necessary to maintain the fund. It should also be noted that salaries in all ranks of policemen and firemen were increased in 1919, 1923 and 1925, all of which were subsequent to the employment of Casserly and Sherry, but prior to the allowance of pensions to any of the three appellants. So far as Erny is concerned, it appears that he was an officer for only one year prior to his disability.

The appellants contend that, upon the happening of the contingency which entitled them to a pension, the right to a pension award vested in them, which right may not subsequently be disturbed by legislative action or municipal ordinance; that where the services are rendered under a pension statute, its provisions become a part of the contract and may not be abrogated by subsequent enactment, nor the pension reduced below the amount of the original award, but that an employee may accept an upward fluctuation. In other words, the contention is that the rights of petitioners became vested and fixed when the contingency happened which entitled him or her to the award. The respondents concede that petitioners have a vested right to a pension, as determined by the case of *O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366], but they insist that the pensioners have not a right to a specific sum of money as a pension. They contend that the salary attached to the rank at the time the payments fall due, and not the salary at the time the pension was awarded, measures its amount.

We are constrained to agree with respondents. Reason and authority both compel this conclusion. In *Klench* v. *Board of Pension Commrs.,* 79 Cal. App. 171, 187 [249 Pac. 46], a case involving similar language, we find the following:

"We have said that it is our belief that the word 'salary' as used in section 4 of said act was intended to refer to the rank

of the retired police officer and not to the time at which he was retired. In other words, the section as phrased seems clearly enough to indicate that what the legislature intended thereby to declare was that on being retired under said act, a member of the police department should be paid a pension based upon the salary which may be paid to police officers of the *rank held by him at the time of the retirement* of such officer. This conclusion is directly supported by the case of *Rumetsch* v. *Davie*, 47 Cal. App. 512, 514 [190 Pac. 1075], wherein it is said by Justice Brittain, speaking for the court: 'While he is on the retired list, it would seem to be entirely consistent with the language, as well as the purpose, of section 95, that he should receive as pension one-half the amount he would receive as a corporal if on active service. This court has no hesitation in determining that the amount of the pension is fixed by the salary attached to the rank of the retired man at the time of retirement, provided he held that rank for the period of one year prior to the date of retirement.' Inferentially, the same view is entertained by the case of *Whitehead* v. *Davie*, 189 Cal. 715, 722 [209 Pac. 1008]. Furthermore, the conclusion we have arrived at regarding the meaning and intent of the language of the section in question is fortified, indeed, it seems to us, conclusively settled, by two significant considerations, the one arising from the pension law itself under which the City of Stockton is operating and has practically operated since the year 1901, and the other arising from a judicial construction of the nature, in legal effect, of the pension granted by pension statutes. The first is the offspring of the provision of section 4 of the statute of 1897, also incorporated into the Ordinance No. 698 as well as into the present city ordinance (No. 854) to the effect that when the physical disabilities suffered by the pensioner shall cease such pension shall cease, and such person be restored to active service as a member of the force of the rank held by him when retired. The second is the declaration by the Supreme Court in a number of cases, notably the case of *O'Dea* v. *Cook, supra,* to the effect that a pension granted to officers and employees of the government for services yet to be performed (and such statutes granting such pensions always operate prospectively) constitutes a part of the compensation of such officers and employees and as such in a sense enters into the contract whereby such officers and employees are

employed. By the first of these considerations it is unquestionably established that, notwithstanding his retirement, a patrolman retired under the pension law of 1889 and the latter statute and ordinances perpetuating the provisions thereof, is still a member of the police department and is subject to such rules of the department as apply in such a case. From the second, considered in the light of the first, it irresistibly follows that a retired patrolman is subject to any changes which may be made in the compensation of patrolmen; that, therefore, an increase made at any time by the proper city authorities in the salary to be paid to such police officer or other members of the department after and pending the retirement of a member of such department under the pension laws operates to correspondingly augment the amount or basis upon which the pension compensation of the retired officer is to be computed.''

In *Aitken* v. *Roche,* 48 Cal. App. 753, 755 [192 Pac. 464], in which the sole question was as to ''whether or not pensioners are entitled to one-half of the pay attached to their retirement rank when pension installments successively become due or to one-half of the pay which was attached to the rank when they were retired'', we also read pertinent language as follows:

''On behalf of the defendants it is correctly stated that the right to pension is a vested one, and that it enters into the contract of employment when a man enters the police department. (*O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366].) From this it is argued that the amount of the prospective pension is fixed. This is fallacious, because if it were as the defendants contend, an incrsase in salary while a man was on active duty would not carry with it, as it does, the right to a correspondingly increased pension upon his subsequent retirement. Under such circumstances there would be no difficulty in determining that the right which was vested is the right to have the pension, not of a particular number of dollars, but 'equal to one-half of the amount of salary attached to the rank', whether it should be more or less than that attached to the rank when the contract of employment was made. A similar contention, made in regard to another sort of contract, would be swept aside with little consideration. Suppose, for instance, the owner of an office building should lease it for a term of years, reserving as rent a sum

equal to one-half of the gross rentals received by the tenant from subtenants, and it were shown that the gross rentals either increased or decreased in subsequent years. The right to a sum equal to one-half of those rentals would be vested, but neither party could successfully contend that the change in the amount of gross rentals warranted any change in the proportionate amount of money to be paid to the owner of the building.''

Again, in *Jones* v. *Cooney*, 82 Cal. App. 265 [255 Pac. 536], it was held that a retired chief of police was entitled to a corresponding increase in his pension when the salary of that office was raised from $400 to $500 a month, the language of the ordinance being the same as that involved here. The case rests upon the authorities herein mentioned and other California cases. We think the construction placed upon the phrase has become so well settled that it should not be disturbed.

But aside from the adjudicated cases, it appears that the language is admirably suited to accomplish justice for retired officers, as well as for the city. The cost of living and the value of money fluctuate, as indicated by the three raises in salaries of officers since Casserly and Sherry were originally appointed, and by the present reduction, brought about by the emergency which has been found to exist. A pension measured by the pay of officers of similar rank inures to the benefit of pensioners, when the value of money is low and the pay increased, but no injustice is done to the city and its taxpayers if, by the increase in the value of money and an emergency, it feels compelled to reduce the cost of government.

Authorities involving a fixed sum of money are not in point, nor can it be argued that there was an abrogation of contractual rights, any more than it may be argued that the reduction in pay of the active officer is a violation of his contract. The reduction in the amount of the pension is in strict accord with the compensation agreement.

It follows from what has been said that the judgments, and each of them, should be and they are affirmed.

Rehearing denied.