[Civ. No. 27834. Second Dist., Div. Two. Aug. 6, 1964.]

J. D. PHILLIS et al., Plaintiffs and Appellants, v. CITY OF
SANTA BARBARA et al., Defendants and Respondents.

Kenneth Sperry for Plaintiffs and Appellants.

Stanley T. Tomlinson, City Attorney, Kenneth R. Nuss, Assistant City Attorney, and J. F. Goux for Defendants and Respondents.

ASHBURN, J.*—In separate counts of a single complaint plaintiff J. D. Phillis, fireman, and J. J. O'Brien, policeman, seek relief, principally declaratory, with respect to their pension rights under the Charter of the City of Santa Barbara. The controversy grows out of a charter amendment which substitutes a fixed pension for a fluctuating one and imposes other limitations upon the pension right which are plainly to the disadvantage of the employees and accompanied by no compensatory advantages.

The trial court held that the actions are barred by section 338, subdivision 1, of the Code of Civil Procedure, and appellants insist that the city is estopped to rely upon the defense of limitation. General demurrer to the second amended complaint was sustained with leave to amend within 15 days. Plaintiffs elected to stand upon their second amended complaint, judgment that they take nothing followed, and this appeal is taken therefrom.

Phillis was a member of the city's fire department from June 29, 1918, until May 1, 1947 (some 29 years) when "he was compelled to resign from active duty because of circumstances beyond his control." O'Brien held a position in the police department from August 18, 1929, until March 23, 1953 (over 23 years) "at which time he was relieved from duty by the acting chief of police" being later suspended[1]

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]"[A] suspension without a time stated for reinstatement, would be in effect a removal." (*Boyd* v. *Pendegast*, 57 Cal.App. 504, 509 [207 P. 713].)

by action of the board of police and fire commissioners on April 15, 1953.

In the city charter, which was adopted January 19, 1927, pensions were provided for members of the fire and police departments by article XV, sections 108-112 thereof. (Stats. 1927, pp. 2089-2091.) Section 108 provides that any member of either department who shall have served therein for 30 years shall, on his request or by order of the board of fire and police pension commissioners, be retired from further service and during good behavior shall ''be paid in equal monthly installments from said [pension] fund a yearly pension equal to two-thirds of the annual salary attached to the rank or position held by him in such department one year prior to the date of his retirement. Provided, that after twenty years' service, on request of such member, or by the commission for the good of the department such person shall be retired and paid in equal monthly installments from said fund a limited pension as follows: For twenty years' service, fifty (50%) of the annual salary of the rank or position held by him one year prior to the date of retirement; and an additional one and two-thirds per cent of such salary for each year over twenty years and less than thirty years in the aggregate served by such member before retirement.''

Section 110 (p. 2090) provides a pension for the widow or child or dependent parents of a member who dies after retirement.

The phrase ''equal to two-thirds of the annual salary attached to the rank or position held by him in such department one year prior to the date of his retirement,'' or an equivalent phrase, confers a right to a fluctuating pension—— one that increases or decreases as salaries paid to active employees go up or down. (*Casserly* v. *City of Oakland,* 6 Cal. 2d 64, 65-69 [56 P.2d 237]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 699-701 [263 P.2d 833]; *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 131-132 [287 P.2d 765]; *Cochran* v. *City of Long Beach,* 139 Cal.App.2d 282, 284 [293 P.2d 839].)

Proceeding upon the basic concept that ''pension payments are deferred compensation'' (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 184 [265 P.2d 884]), it has been held in a consistent line of decisions from *Terry* v. *City of Berkeley, supra,* (1953) 41 Cal.2d 698, 700, 703 and *Allen* v. *City of Long Beach, supra* (1955) 45 Cal.2d 128, 131-132 to the present

time[2] that burdensome limitations upon the pension right, unless accompanied by compensating benefits, cannot be imposed by amendatory legislation and any attempt to do so is void.

By amendment of May 17, 1937, article XV-A was added to the Santa Barbara Charter. (Stats. 1937, ch. 101, p. 3000.) Section 3 thereof limits eligibility for a pension to members who have attained the age of 55 years (except for service-connected disability and requires aggregate service for 25 years in the department. The 55-year limitation is entirely new, no minimum being contained in the former law. The 25-year aggregate service provision is a reduction from the 30 years found in section 108 prior to this amendment.

Under the amendment the pension is to be a fixed sum computed as follows: ''For twenty-five years service, 50% of the average monthly rate of salary which such member received during the five years immediately preceding his retirement and an additional 1 and 2-3rds% of such average rate of salary for each year over twenty-five years and less than thirty-five years served by such member before retirement; for thirty-five years service or over, 2-3rds of such average rate of salary received during the five years immediately preceding retirement.'' (Stats. 1937, p. 3003.)

The draftsman, alerted doubtless by familiarity with cases such as *Casserly* v. *City of Oakland, supra* (1963) 6 Cal.2d 64, 66; *Rumetsch* v. *Davie* (1920) 47 Cal.App. 512, 514 [190 P. 1075]; *Aitken* v. *Roche* (1920) 48 Cal.App. 753, 755 [192 P. 464]; *Klench* v. *Board of Pension Fund Comrs.* (1926) 79 Cal.App. 171, 187 [249 P. 46], inserted in the amendment a section 8 which seems intended to anticipate our present problem and the rule later laid down in *Allen* v. *City of Long Beach, supra* (1955) 45 Cal.2d 128, 131-132 and similar later cases. The section is set forth in the footnote.[3]

---

[2] See cases cited in footnote 8, *infra*.

[3] ''SECTION 8: Any active member of the Fire or Police Department who at the time of the taking effect of this amendment shall have completed in the aggregate twenty years service in such Department in any rank or capacity, whenever he elects to retire or is retired by said Board, shall be entitled to receive in equal monthly installments from the City of Santa Barbara and not from the Fire and Police Pension Fund, the pension which such person would have been entitled to receive under article XV of the Charter of said City as originally adopted, the same as if said article was not affected by this amendment, and such member shall not be required to make any contribution to the Fire and Police Pension Fund as provided by section 4 hereof. Said article XV of said Charter shall also be continued in force, effect and operation with

The trial judge having placed the ruling solely upon the statute of limitations, counsel direct their attention principally to that issue.

Appellants say that the statute starts to run in a declaratory relief action when the controversy develops and not before that time. Generally speaking that is the rule, but it is subject to the qualification that in cases where a cause of action for basic coercive relief which plaintiff seeks is barred the statute also runs against the plea for declaratory relief.

*Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 549-550 [305 P.2d 20]: "It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a contract and requests that the rights and duties be adjudged. [Citation.] If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration. [Citations.]

"However, where a complaint shows on its face that all relief is barred by the statute of limitations, it is unnecessary for the court to make a declaration of rights, and a general demurrer may be sustained. [Citation.]"

*Tostevin* v. *Douglas,* 160 Cal.App.2d 321, 330 [325 P.2d 130]: "Until some conventional right of action has accrued, the statute of limitations does not operate independently to cut off the right to bring one for declaratory relief, and after a 'coercive' right of action has accrued the alternative right to bring an action for the declaratory remedy continues concurrently with the 'coercive' right of action. *But* after the 'coercive' remedy is barred by the statute of limitations, a declaratory relief action may not be utilized to circumvent the purpose of the statute."

To the same effect see: *Maguire* v. *Hibernia Sav. & Loan Soc.,* 23 Cal.2d 719, 734 [146 P.2d 673, 151 A.L.R. 1062];

respect to such pensions as may be at the time this amendment goes in effect vested by reason of the death or retirement prior thereto of certain members of the Fire or Police Department of said city, but said article XV, except as in this section 8 hereinbefore otherwise provided, shall be deemed repealed and shall be of no further force, effect or operation whatsoever, save and except to the extent that the same may be nonrepealable and must be continued in any force and effect with respect to any person or persons by reason of paramount provisions and force of law and as to such person or persons and to such extent and no further, said article XV is continued in force and effect." (P. 3007.)

*Leahey* v. *Department of Water & Power,* 76 Cal.App.2d 281, 286 [173 P.2d 69]; *Mills* v. *Mills,* 147 Cal.App.2d 107, 119 [305 P.2d 61]; *Lubin* v. *Lubin,* 144 Cal.App.2d 781, 792 [302 P.2d 49].

Reference to section 108 of article XV of the charter shows that the awarding of a pension may be initiated by the request of the employee or by order of the pension commission. In each of the cases before us request was made by the employee and rejected under circumstances presently to be mentioned. Phillis' request was made on or about May 1, 1947, and that of O'Brien on or about April 15, 1953. The obligation being statutory, the three-year statute (Code Civ. Proc., § 338, subd. 1) applies (*Skaggs* v. *City of Los Angeles,* 43 Cal.2d 497, 500 [275 P.2d 9]; *Hermanson* v. *Board of Pension Comrs.,* 219 Cal. 622, 624 [28 P.2d 21]), and it begins to run upon accrual of the cause of action, which means in these pension cases "at the time when the plaintiff first had the power to make such demand." (*Dillon* v. *Board of Pension Comrs.,* 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]; *Union Paving Co.* v. *City Council,* 189 Cal.App.2d 440, 442 [11 Cal.Rptr. 351]; *Carey* v. *Retirement Board,* 131 Cal. App.2d 739, 747 [281 P.2d 25].)[4]

The request of plaintiff Phillis was rejected immediately (May 1947) and the statute then began to run; he filed a formal claim on March 2, 1962, which was rejected on April 12, 1962; and this action was commenced on May 11, 1962; hence his cause of action is barred unless the city is estopped to assert the statute of limitation as claimed by him.

Plaintiff O'Brien was relieved from duty by the chief of police on March 23, 1953, and, while he was carried on the payroll until April 15, 1953, on which day the board suspended him, he was paid no salary during that period. His request or demand for a pension was made at or about the time of suspension in April 1953.

---

[4]Respondents' supplemental brief says: "Even if the plaintiffs could put off the running of the statute, in our case the appellants did request they be granted a pension when their service as active members terminated and ended, for Phillis on May 1, 1947 (sixteen years ago) and for O'Brien on April 16, 1953 (over ten years ago), and they were then and there told and refused any pension on the ground that they were not eligible for any pension.

"The Charter of Santa Barbara did not require or call for any *formal* request for retirement or pension, nor does it require or call for any *formal* rejection of any request or asking or application for a pension."

 It is established law that one whose right of action is dependent upon his making a demand cannot postpone the running of the statute of limitation by failing for an unreasonable period to thus assert his right, and unless the demand is made within such period the cause of action is barred.

*Stafford* v. *Oil Tool Corp.,* 133 Cal.App.2d 763, 765-766 [284 P.2d 937]: ''Where a demand is an integral part of a cause of action, the statute of limitations does not run until demand is made. The plaintiff cannot, however, indefinitely suspend the running of the statute by delaying to make a demand. The general rule is that where demand is necessary to perfect a right of action and no time therefor is specified in the contract, the demand must be made within a reasonable time after it can lawfully be made. What is a reasonable time depends upon the circumstances of each case; but in the absence of peculiar circumstances, a time coincident with the running of the statute will be deemed reasonable, and if a demand is not made within that period, the action will be barred. [Citations.]

''Where, as here, a plaintiff has it in his power at all times to fix his right of action by making a demand on defendant, such demand must be made within a reasonable time after it can be lawfully made, and such a demand must be made within the period of the statute of limitations. [Citation.]''

Accord: *Harrigan* v. *Home Life Ins. Co.,* 128 Cal. 531, 548-549 [58 P. 180, 61 P. 99]; *Ginther* v. *Tilton,* 206 Cal.App.2d 284, 286 [23 Cal.Rptr. 601]; 31 Cal.Jur.2d, § 34, p. 462.

On the subject of estoppel the complaint alleges the following facts:

As to Phillis: At and prior to the time of his resignation he discussed with the administrative officers of the city, including the board of fire and police pension commissioners and the city attorney, the possibility of his obtaining a retirement pension and was informed by them that he was not eligible because he was only 53 years of age and would not be eligible until he attained the age of 55 years as required by article XV-A of the charter. Plaintiff, a fireman, was untrained in the law and members of the board and the city attorney represented ''that they were fully informed upon the subject and were possessed of a superior knowledge of the law.'' One of the board members was a fellow employee with whom plaintiff has worked for many years and plaintiff had the utmost confidence in the integrity and ability of the

members of the board and its legal adviser, the city attorney; that a confidential relationship existed between plaintiff and the members of the board and other administrative officers of the city.[5] Plaintiff, being only 53 years of age, believed and relied upon the information and advice so given by defendant and "for that reason alone" failed to make any formal application for a retirement pension or to make any further effort to obtain such pension until February 1962 and he did not discover that he was legally entitled to receive one until so informed by his attorney of record herein during the month of January 1962. Plaintiff reposed great trust and confidence in the city attorney and the administrative officials and its pension commissioners "and believed and relied upon the foregoing information and advice until informed to the contrary by their [his] present attorney." Immediately after his resignation on May 1, 1947, plaintiff left the State of California and did not return to Santa Barbara or come into contact with any of its officers or residents until December of 1961, at which time he visited some of the former employees with whom he had worked. They told him for the

[5]This appears to be a conclusion but probably permissible under the doctrine of *Jackson* v. *Pasadena City School Dist.*, 59 Cal.2d 876, 879 [31 Cal.Rptr. 606, 382 P.2d 878]. In *Burks* v. *Poppy Constr. Co.*, 57 Cal.2d 463, 473-474 [20 Cal.Rptr. 609, 370 P.2d 313], it is said: "The sustaining of the demurrer to the second cause of action cannot be justified on the ground that the allegation that the housing accommodations were 'publicly assisted' was merely a conclusion of law. The distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. [Citations.] ... In permitting allegations to be made in general terms the courts have said that the particularity of pleading required depends upon the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff, and that less particularity is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff. [Citations.] In accordance with these principles it may be alleged generally, in the terms of the statute, that housing accommodations are 'publicly assisted.'"

It is pertinent here to note that "'A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation;

"The confidential relationship and obligations arising out of it are, therefore, dependent upon the existence of confidence and trust, ...

"The prerequisite of a confidential relationship is the reposing of trust and confidence by one person in another who is cognizant of this fact. The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another. . . .'" (*Vai* v. *Bank of America*, 56 Cal.2d 329, 337-338 [15 Cal.Rptr. 71, 364 P.2d 247].)

first time that an attorney had been employed by some former members of the police and fire departments to investigate their pension rights and it might be to his advantage to contact that attorney, Mr. Kenneth Sperry. This he did in the month of January 1962 and was then advised for the first time that he was eligible to receive a pension as of May 1, 1947, and that the changes purportedly brought about by the 1937 charter amendment, in the opinion of Mr. Sperry, were invalid and ineffective as applied to Mr. Phillis. Accordingly, this suit was filed on May 11, 1962.

Plaintiff further alleges that on numerous occasions from May 17, 1937, to the present time members of the police and fire departments and the plaintiffs herein were informed by administrative officials, the board and the city attorney that article XV of the city charter had been repealed by article XV-A and their pension rights were to be governed solely by the provisions of article XV-A and that they had no vested pension rights of any kind by reason of having performed services as members of the police or fire department prior to May 17, 1937; that shortly after the adoption of said article XV-A the city caused to be distributed to the public printed copies of the city charter in which it was stated that article XV has been ''Repealed by Article XV-A, May 4, 1937.'' It is inferable that the representations mentioned in this paragraph of this opinion were made to plaintiff Phillis. But we think that fact (if it be a fact) does not alter the situation created by the other representations alleged to have been made to him.

▆▆ When required by considerations of common justice (*United States Fid. & Guar. Co.* v. *State Board of Equalization,* 47 Cal.2d 384, 388 [303 P.2d 1034]), especially to its own employees, a municipality may be estopped. (*Cruise* v. *City & County of San Francisco,* 101 Cal.App.2d 558, 562 [225 P.2d 988]; *Rand* v. *Andreatta,* 60 Cal.2d 846, 849 [36 Cal.Rptr. 846, 389 P.2d 382].) ▆▆ In *Cruise* it is said, at page 562: ''If the complaint alone, or with the proposed amendments, pleaded an estoppel, the question as to whether such estoppel exists is a question which should be left to the trier of fact to be determined as a question of fact, and not determined as a question of law. (*Judelson* v. *American Metal Bearing Co.,* 89 Cal.App.2d 256, 266 [200 P.2d 836]; *Gump* v. *Gump,* 42 Cal.App.2d 64, 69 [108 P.2d 21].)''

The leading case in the pension field is *Tyra* v. *Board of Police etc. Comrs.,* 32 Cal.2d 666 [197 P.2d 710]. It arose

upon mandamus filed in the superior court seeking to compel pension commissioners to order a fireman's retirement on a pension. The trial judge held the proceeding to be barred by section 338, subdivision 1, of the Code of Civil Procedure, and was reversed. Plaintiff had been injured and obtained an award from the Industrial Accident Commission. Both before and after that date he had applied to the city for a pension. The members of the pension commission and the attorneys representing them (doubtless the city attorney) incorrectly advised plaintiff that so long as he was receiving workmen's compensation benefits he was not entitled to a pension; he was further advised that he could not have both and that benefits under the compensation act were "in lieu of and in place of the benefits provided in section 187 of the Charter." The court held that thereby plaintiff was persuaded not to apply for a pension until sometime in 1941 and said at pages 670-671:[6] "The delay charged to the plaintiff was induced by the erroneous position and advice of the defendants and their attorneys. They may not therefore now properly interpose the defense as a bar to the plaintiff's delayed course of action. The doctrine of equitable estoppel declared and applied in such cases as *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323] (cases cited at p. 628), and *Benner* v. *Industrial Acc. Comm.*, 26 Cal.2d 346 [159 P.2d 24] (cases cited at p. 349), is applicable under the circumstances here presented."

The basis for estoppel is much more clearly drawn in the instant complaint than was done in the *Tyra* case.

That decision was followed in *Lerner* v. *Los Angeles City Board of Education*, 59 Cal.2d 382 [29 Cal.Rptr. 657, 380 P.2d 97], an action for a declaration of plaintiff's right to be reinstated as a permanent teacher. At page 396 the court said: "The state board's advice to Lerner that it lacked jurisdiction or authority to restore his credential, and that no school district could legally employ him, largely induced

---

[6]We do not concur in the view expressed in *Henry* v. *City of Los Angeles*, 201 Cal.App.2d 299, 310 [20 Cal.Rptr. 440], that the *Tyra* comments on estoppel are dicta. Pertinent here is the language of *Bank of Italy* v. *Bentley*, 217 Cal. 644, 650 [20 P.2d 940]: "It is well settled that where two independent reasons are given for a decision, neither one is to be considered mere *dictum*, since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and each is of equal validity."

Lerner's inaction and would estop the state board from later reliance upon the statute. . . .

"That an estoppel may bar an administrative board from raising the statute of limitations follows from our ruling in *Tyra* v. *Board of Police etc. Comrs.* (1948) 32 Cal.2d 666 [197 P.2d 710]. In that case the Long Beach Board of Police and Fire Commissioners incorrectly advised plaintiff, an injured fireman, that he could not obtain a pension so long as he received workmen's compensation benefits. After the limitation period had run, the plaintiff sought mandate to compel payment of the pension. The court stated that: 'The delay charged to the plaintiff was induced by the erroneous position and advice of the defendants and their attorneys. They may not therefore now properly interpose the defense as a bar to the plaintiff's delayed course of action.' "

In *Benner* v. *Industrial Acc. Com.*, 26 Cal.2d 346, 349 [159 P.2d 24], it is said: "An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. (*Verdugo Canon Water Co.* v. *Verdugo,* 152 Cal. 655, 683 [93 P. 1021].)

"To create an equitable estoppel, 'it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.' "

*Tyra* was also followed in *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684, 691 [252 P.2d 649]; *Dettamanti* v. *Lompoc Union School Dist.*, 143 Cal.App.2d 715, 720 [300 P.2d 78].

In the recent case of *Ginns* v. *Savage,* 61 Cal.2d 520, the Supreme Court said at page 524 [39 Cal.Rptr. 377, 393 P.2d 689]: "Where delay in commencing action is induced by conduct of the defendant it cannot be availed of by him as a defense (*Adams* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 487, 489 [1, 2] [116 P.2d 75]), even though there was no designed fraud on the part of the person sought to be estopped. (*Benner* v. *Industrial Acc. Com.* (1945) 26 Cal.2d 346, 349 [159 P.2d 24].)"

The case of *Adler* v. *City of Pasadena,* 57 Cal.2d 609 [21 Cal.Rptr. 579, 371 P.2d 315], is not opposed to the *Tyra* doctrine; there were no such representations made to Adler as were relied upon by Tyra and the decision was distinguished on that ground at page 615. Like differentiation of the *Tyra* case is found in *Henry* v. *City of Los Angeles,* 201 Cal.App.2d 299 at p. 310 [20 Cal.Rptr. 440]:

"(a) There was no *misrepresentation of law* because prior to the *Abbott* case the defendants simply advised claimants what the charter provisions, as amended, contained.

"(b) There is no confidential or fiduciary relationship here. . . .

"(c) It has already been pointed out the city and board had no *superior knowledge* of the law."

Hence the *Henry* characterization as dicta of the remarks of the *Tyra* decision upon estoppel does not obscure the fact that the two cases are not really opposed.

The Santa Barbara officials, who stood in a confidential relationship to plaintiff, asserted that "they were fully informed upon the subject and were possessed of a superior knowledge of the law" and that Phillis "was not eligible for such a pension for the reason that he was only 53 years of age and that he would not be then eligible to receive such a pension until he had attained the age of 55 years as then required by the terms and provisions of Article XV-A of the City Charter. ..." He having the utmost confidence in them, believed and relied upon said advice. These representations assumed knowledge of and conveyed an interpretation of the effect of enactment of the amendment and of its vague section 8, regardless of any uncertainty they may have entertained because of lack of exact decisional precedents.

The city officials were not obligated to give advice to Phillis but one who thus voluntarily assumes to guide another is "required not to tell plaintiff anything that would reasonably tend to mislead [him]." (*Cruise* v. *City & County of San Francisco, supra,* 101 Cal.App.2d 558, 564.)

We must hold therefore that the city is estopped to invoke the statute of limitation as to plaintiff Phillis, and that the sustaining of the demurrer on that ground is erroneous.

The situation with reference to the statute is not substantially different in the case of plaintiff O'Brien.[7] He

[7]The original settled statement, which constitutes our record on appeal and contains a copy of the pleadings, has added to the normal difficulties of this case through statements that now appear to be clerical errors of an important nature. The second amended complaint as there set forth alleges that O'Brien was relieved from active duty on March 23, 1953, but was carried on the payroll until April 15, 1963, on which 1963 date plaintiff was suspended by the board; that he, about the time of said *suspension* informed the city's administrative officials of his desire to apply for a retirement pension, and was told the same

was relieved from active duty on March 23, 1953, and formally suspended on April 15, 1953. City officials, including the city attorney — all of whom occupied a confidential relationship with him and in whom he had the utmost confidence—made substantially the same representations to him as they had made to Phillis, made the same assertions of superior knowledge, spoke of matters beyond their realm of actual knowledge and said things calculated to mislead and did mislead plaintiff, who believed in same and relied thereon until February 28, 1962, about a month after learning of his alleged rights from Mr. Sperry. His formal claim was rejected on April 12, 1962, and this action filed on May 11, 1962.

His right to request or demand a pension had accrued on March 23, 1953, or on April 15, 1953, at the latest. Having served 23 years he was entitled under article XV, section 108, to a pension "on request," under the "proviso" portion of section 108. The right to earn that pension vested immediately upon his entering the city employment. (*Dryden* v. *Board of Pension Comrs.,* 6 Cal.2d 575, 579 [59 P.2d 104]; *Houghton* v. *City of Long Beach,* 164 Cal.App.2d 298, 305 [330 P.2d 918]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 517 [332 P.2d 324].) So his cause of action was barred before his suit was filed unless the city was estopped to rely upon the limitation statute. The same considerations which prompt the holding of such an estoppel in Phillis' case operate here and it must be held that the city is estopped to rely upon the statute of limitations in the case of Mr. O'Brien.

The holding as to each plaintiff immediately poses the

things as had been represented to Phillis, and believed and relied thereon, with the result that he did not file a written claim until February 28, 1962. This seems to leave him inactive for a period of almost 10 years. But counsel for both sides of this litigation repeatedly state in their briefs that the relief from active duty and the formal suspension occurred on March 23, 1953, and April 15, 1953, respectively. The accuracy of April 1953 or April 1963 probably will spell victory or defeat for O'Brien. Desiring to do complete justice and now to terminate this litigation, if possible, we, acting pursuant to rule 12(a) of California Rules of Court, ordered transmission to us of the original of the superior court file. The second amended complaint reveals the use of the year 1953, not 1963, in each instance, and thus squares with the briefs of both parties; the same is true of the original and the first amended complaints. We are now satisfied that 1953 is the correct date and that we, in the interests of justice, should proceed upon that basis; counsel so stipulated upon oral argument.

question whether, the trial court having expressly limited its ruling to the statute of limitations, a reviewing court should pass upon other questions presented by the record, especially where their consideration may expedite justice by putting a virtual end to the case. Although the general procedure is that the appellate court will not pass upon questions not decided below (5 Am.Jur.2d § 726, p. 169), the rule is not without exceptions. See *Dickow* v. *Cookinham,* 123 Cal.App. 2d 81 [266 P.2d 63, 40 A.L.R.2d 1066]; *Zeitlin* v. *Arnebergh,* 59 Cal.2d 901, 907-908 [31 Cal.Rptr. 800, 383 P.2d 152]. As a result of suggestions made by the court upon oral argument counsel have submitted supplemental briefs upon the question whether the court decisions or the express terms of article XV-A of the charter preserve to plaintiffs their right to the pension benefits conferred by article XV. We find the authorities to be clear upon this subject.

Ever since *Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128, was decided in 1955 the courts of this state have adhered to the doctrine therein stated, namely, that ''To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages'' (p. 131) and that substituting a fixed pension for a fluctuating one is definitely a disadvantage to the employee.[8]

We must look then for countervailing advantages in article XV-A. It places a minimum age of 55 years upon the right to a full pension whereas the original article XV fixes no age limit—thus we start our inquiry by finding a disadvantage imposed by the amendment. It does however place 25 years of service as the condition to the full pension, while article XV required a 30-year period. On its face this looks like an advantage to the employee but it is hardly a compensating one. For instance, a fireman or policeman who had reached 50 years and had 30 years of service would be entitled to a full pension forthwith under the old law but would have to wait until age 55 under the new, or 5 more years—thus his period

---

[8]See, among others, *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 447 [326 P.2d 484]; *Abbott* v. *City of San Diego,* 165 Cal.App.2d 511, 517 [332 P.2d 324]; *Chapin* v. *City Commission,* 149 Cal.App.2d 40, 44 [307 P.2d 657]; *Cochran* v. *City of Long Beach,* 139 Cal.App.2d 282, 287-288 |293 P.2d 839]; *Adler* v. *City of Pasadena,* 57 Cal.2d 609, 612 [21 Cal.Rptr. 579, 371 P.2d 315].

of service would have to extend to 35 years under the amendment. ▮▮▮ As stated in *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438, 453, '' ... it is by advantage or disadvantage to the individual employes whose already earned and vested pension rights are involved that the validity of attempted changes in those rights depends, and benefits subsequently obtained by other employes cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued.'' (See also *Houghton* v. *City of Long Beach,* 164 Cal.App.2d 298, 311 [330 P.2d 918].)

▮▮▮ More important is the fact that this reduction in the service period necessary to qualify for the pension cannot be said to compensate for the substitution of a fixed pension in place of a fluctuating one. The complaint says: ''That throughout the past 20 years the salaries which have been provided for and paid to active members of the Police and Fire Departments of said city have been increased by more than 200 per cent in order to keep them adjusted to the changing value of the dollar and the current cost of living.'' The language of the *Allen* case, at page 132, becomes here pertinent: ''Payment of a fixed amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of his pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy. We are at present in an era of rising salaries and high cost of living. ... It is, of course, impossible to predict with certainty whether, at the time of retirement of each of the employees here involved, the amount paid him under a provision for a fixed benefit would be greater or less than that paid him under a fluctuating benefit system, but that very uncertainty indicates the advantage of a plan for fluctuating benefits which attempts, however roughly, to reflect the actual purchasing power of the dollar. Under all the circumstances, it appears that plaintiffs' rights would be adversely affected by the change to the fixed benefit plan.''

The complaint at bar further alleges: ''That as construed and applied by the defendants, said Article XV-A has resulted in the payment of substantially smaller monthly amounts to those who have been granted pensions than the monthly amounts that were payable under the terms and provisions of

said Article XV as adopted in 1927 and the creation of additional and more stringent requirements in order to qualify for the receipt of pension benefits.''

Appellants' supplemental brief specifies further disadvantages resulting to them from application of article XV-A; set forth in the footnote.[9]

---

[9]''1. A fixed pension based upon the average salary received for the five years immediately preceding retirement was substituted for the previously promised fluctuating pension. As applied to the plaintiff O'Brien, 55 per cent of the average salary received five years prior to retirement ($370.63) would amount to $203.85 per month, as opposed to a fluctuating pension equal to $405.35 per month as of the date of the filing of the second amended complaint, at which time the salary for a captain in the Police Department was $737 per month (Settled Statement, p. 23). With respect to the plaintiff Phillis, he would be entitled to a fixed pension of $120.76 per month (63 1/3 per cent of $190.68), as opposed to a fluctuating pension as provided by Article XV of $340.10 per month as of the date of the filing of the second amended complaint. (63 1/3 per cent x $537; Settled Statement, p. 25.)

''2. The minimum period of service to earn a 50 per cent pension was increased from 20 to 25 years.

''3. A minimum age limit of 55 years which rendered each plaintiff ineligible was imposed by Article XV-A, whereas no minimum age for retirement was contained in Article XV.

''4. A compulsory salary deduction equal to six per cent was imposed by Article XV-A, whereas under Article XV, Section 112, the city alone was compelled to appropriate sufficient moneys by the use of its taxing power to the Fire and Police Pension Fund to pay all pensions, with the exception of certain specified sources of revenue, namely, donations to the Fire and Police Departments for services of its members, fines imposed upon its members for violation of the rules and regulations of the departments, and the proceeds from the sale of unclaimed property.

''5. The service-connected disability pension was changed from a fluctuating monthly payment equal to one-half of the salary attached to the rank or position held at the time of the retirement order (Section 109 of Article XV) to a fixed amount to be determined by the board equal to 'not less than 20% nor more than 50% of the salary paid to such member during the five years, or all of the years if less than five, immediately preceding retirement.' (Sect. 5 of Article XV-A.)

''6. The fluctuating death benefit pension provided by Section 110 of Article XV equal to one-half of the salary attached to the rank held at the time of death or one year prior to the retirement of the member which was payable to the widow, minor child, or dependent parents, in the event of death due to service-connected injury, 'or from sickness caused by the discharge of such duty, or after retirement, or while eligible to retirement from such department' was changed to a fixed pension 'equal to one-half of the average monthly rate of salary which said member received during the five years, or of all his years of service if the same be less than five, immediately preceding his death or retirement from active duty in such Department,' and was payable only if the member 'shall die as a result of any injury or sickness arising out of and in the course of his employment in such department,' and the same

The suggestion was made at oral argument by respondents' counsel that the 1937 charter amendments were justifiable as modifications of vested pension rights "for the purpose of keeping a pension flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system" (the language of *Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128, 131.) But the substitution of a fixed pension for a fluctuating one does not fall in this category and the *Allen* case so held.

The contention that maintenance of the solvency of the pension fund further justifies these changes cannot prevail. The original article XV assured the solvency of the fund through section 112 which contains this provision: "The City Council shall each year estimate the amount to be placed in said Pension Fund and the City Council shall appropriate the amount of such estimate to the Fire and Police Pension Fund, and also the amount of any deficit which may remain therein in the event of the appropriation of any previous year prove insufficient to pay all demands drawn against said fund." (Stats. 1927, ch. 14, p. 2091.) Article XV-A in sections 4 and 10 attempts to transfer part of this burden to the prospective pensioners (Stats. 1937, ch. 101, p. 3003). Section 4 imposes for the first time a 6 per cent contribution upon the members and requires the city to pay into the fund a like amount plus such further sum as may, by competent actuarial advice acceptable to the board and city council, be established as adequate to provide within 40 years after effective date of the amendment, a sum equal to the accrued li-

was 'payable to the persons entitled thereto only upon and during their good behavior.' (Sect. 6 of Article XV-A.)

"7. The disability and death benefit pensions payable under the provisions of Article XV-A were further limited by the provisions of Section 7 thereof, which stated that: 'Any amounts which may be paid or payable by or for the city under the provisions of any Workmens Compensation or similar law to a member or to the dependents of a member of the Fire or Police Department on account of any disability or death of such member shall, to the extent of the total of such payments, reduce the liability of the Service Death and Disability Fund to pay benefits under either section 5 or section 6 of this article and such Fund shall be liable to pay to such member or such dependents only the difference between the aggregate total of such compensation or death benefit payments and the pension benefits under said section 5 or 6, if the latter be greater' whereas under Article XV the pensioner would be entitled to the full pension plus Workmens Compensation benefits. (*Holt* v. *Police & Fire Pension Comrs.,* 86 Cal.App.2d 714 [196 P.2d 94].)"

abilities of the retirement plan. Section 10 (p. 3007) substantially reiterates the provisions of section 4. **[18]** There is nothing in the instant record to suggest that the pension fund was not or had not been solvent or that it was threatened with insolvency and hence there is no factual basis for the argument that a requirement that members contribute 6 per cent of their salaries is reasonable or advantageous to the members who had earned vested rights prior to the enactment of article XV-A, members situated as were the appellants herein. *Abbott* v. *City of San Diego, supra,* 165 Cal.App.2d 511, 519-520, supports the views just expressed. The case before us is in this respect the exact reverse of *Houghton* v. *City of Long Beach, supra,* 164 Cal.App.2d 298, 306, which, therefore, proves to be not persuasive here.

 There is no merit in respondents' claim that the rule of the *Allen* and *Abbott* cases, requiring equal advantages to offset disadvantageous amendments to a pension plan, is confined in its application to employees who have fully earned their pension. *Abbott* v. *City of San Diego, supra,* 165 Cal.App.2d 511, 517:

''The pension provisions of a city charter are an indispensable part of the contract of employment between a city and its employees, creating a right to pension benefits as an integral part of compensation payable under such contract, which vests upon acceptance of employment. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 852 [179 P.2d 799]; *French* v. *French,* 17 Cal.2d 775, 777 [112 P.2d 235, 134 A.L.R. 366]; *Dryden* v. *Board of Pension Comrs.,* 6 Cal.2d 575, 579 [59 P.2d 104].) 'This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent changes in the law.' (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 183 [265 P.2d 884].)''

 We are constrained to hold that article XV-A is invalid as to these plaintiffs and the demurrer to the second amended complaint should have been overruled except as to the fourth cause of action of plaintiff O'Brien, which is barred by the statute of limitation, as hereinafter shown.

This conclusion renders unnecessary any discussion of the meaning or effect or constitutionality of section 8 of the amended charter.

The complaint also seeks declaratory relief with respect to plaintiff's widow or other dependents, alleging: ''Plaintiffs and each of them further contend that upon the death of

either party plaintiff, his widow or other dependents, respectively, will be entitled to receive the death benefit pension as provided by the terms of said Article XV of the charter as adopted in 1927, to wit, an amount equal to one-half of the salary attached to the rank or position held by such plaintiff as aforesaid in accordance with the terms and provisions of Section 110 of said Article XV of the Santa Barbara City Charter.''

■ ''The rights of a widow or minor child entitled to pension payments on the death of the employee vest on the happening of the contingency specified in the statute—that is, the death of the employee.'' (38 Cal.Jur.2d § 20, p. 338.) See also, *Benson* v. *City of Los Angeles,* 60 Cal.2d 355, 360-361 [33 Cal.Rptr. 257, 384 P.2d 649].

■ Section 110 of article XV provides a pension for a widow or other dependents ''equal to one-half of the salary attached to the rank or position which said deceased person held in such department at the time of his death or one year prior to the date of his retirement from active duty in such department,'' virtually a paraphrase of the language in section 108. It provides a fluctuating pension which cannot be affected by subsequent legislation attempting to substitute a fixed stipend (see *Hafey* v. *City of Berkeley,* 163 Cal.App.2d 474, 478-479 [329 P.2d 711]; *Abbott* v. *City of Los Angeles,* 50 Cal.2d 438, 454-455 [326 P.2d 484]; *Henry* v. *City of Los Angeles,* 201 Cal.App.2d 299, 312-315 [20 Cal.Rptr. 440]).

■ The estoppel extends to this phase of the case as well as that covering the rights of the employee during his lifetime.

■ The second cause of action, a common count for recovery of accrued pension for Phillis, survives the demurrer on the strength of the first count which we have been considering above.

The third cause of action, in behalf of O'Brien, being in the nature of a common count, stands with the first one which states the constituent facts fully.

■ Count IV, claiming refund of deductions made from O'Brien's salary is cast in the form of accounting for trust funds and relief on the ground of fraud and mistake. It refers only to deductions aggregating $3,125 made from O'Brien's salary up to April 15, 1953, the date on which plaintiff was suspended.

■ The 1927 charter contained no provision for refund of deductions. The 1937 amendment, which does so provide in

article XV-A, section 4, requires each member of the department to contribute to a service retirement fund 6 per cent of his salary and imposes upon the city an obligation to pay into said fund a like amount each year plus such further amount as may, by competent and acceptable actuarial advice, be established as adequate to provide within 40 years after the amendment a sum equal to accrued liabilities of the retirement fund. Section 10 requires the city to pay annually into the service retirement fund such sums as may be necessary to keep it solvent. That the monies so withheld from a fireman or policeman do not create a trust fund, as claimed by plaintiff, is established by *England* v. *City of Long Beach,* 27 Cal.2d 343, 347 [163 P.2d 865] ; *Goodwin* v. *Board of Trustees,* 72 Cal.App.2d 445, 450-451 [164 P.2d 512] ; *Eaton* v. *City of Los Angeles,* 201 Cal.App.2d 326, 330-333 [20 Cal. Rptr. 456] ; *Adler* v. *City of Pasadena,* 57 Cal.2d 609, 617 [21 Cal.Rptr. 579, 371 P.2d 315]. It is said in *Goodwin,* at page 450: ''Such a plan does not limit the retirement allowance to the fund, but the obligation to pay the retirement allowance, once it vests, becomes a general obligation of the governmental agency involved.''

Plaintiff's claim, if any he had, is barred by section 338, subdivision 1, Code of Civil Procedure (*Carrick* v. *City & County of San Francisco,* 202 Cal.App.2d 402, 410 [20 Cal.Rptr. 878]), unless there be an estoppel. An action for an accounting is barred when it appears that the statute has run against the basic cause of action to which the accounting is a mere incident (*Jefferson* v. *J. E. French Co.,* 54 Cal.2d 717, 719 [7 Cal.Rptr. 899, 355 P.2d 643] ; *People* v. *Union Oil Co.,* 48 Cal.2d 476, 482 [310 P.2d 409].)

While the amendments of 1937 do provide for contributions to the pension fund by the members of the department and for withdrawal of same upon leaving the service, that right is limited to one who has served for five years and made contributions to the fund for a like period. It is inferable that plaintiff did make such contributions for five years before his suspension in 1953. His complaint adopts that date as the time of his severance from the service and hence his claim is barred by section 338, subdivision 1, Code of Civil Procedure, in the absence of an estoppel.

Plaintiff's argument that this is an action to recover money deducted and held through fraud or mistake does not find substantial factual support in the complaint or the statute.

No argument is presented to the effect that this phase of the 1937 legislation is to the disadvantage of the member and not compensated by corresponding advantage. It is therefore to be treated as valid, which it probably is. (*Houghton* v. *City of Long Beach*, 164 Cal.App.2d 298, 306 [330 P.2d 918].)[10]

The representations which gave rise to an estoppel had no reference to salary deductions, hence defendant is not estopped with reference to this claim and the action is barred as to the fourth count.

The ruling of the superior court is correct as to the fourth cause of action of plaintiff O'Brien and erroneous as to the first and third causes of action on his behalf; it is erroneous as to all counts alleged on behalf of plaintiff Phillis. The judgment is reversed with instructions to the lower court to dispose of all counts of the complaint in a single judgment and otherwise to take such further proceedings as may be not inconsistent with this opinion.

Fox, P. J., and Herndon, J., concurred.

The petitions for a rehearing were denied September 3, 1964, and respondents' petition for a hearing by the Supreme Court was denied October 7, 1964.

---

[10]Section 13 of said 1937 statute contains a severability clause reading:

"SECTION 13: If any section, sub-section, sentence, clause or phrase of this article XV-A is for any reason held to be unconstitutional in whole or in part, such decision shall not affect the validity of the remaining portions of this article; and if any section, sub-section, sentence, clause or phrase of this article or the whole of this article is for any reason held to be unconstitutional in whole or in part as to any particular person or persons or class or classes of persons, such decision shall not otherwise affect this article nor shall such decision affect the force, effect and operation of this article as to any other person or persons, or class or classes of persons." (Stats. 1937, ch. 101, p. 3008.)