William Charles ELLGASS, Appellant,

v.

**BROTHERHOOD OF RAILROAD TRAINMEN INSURANCE DEPARTMENT, INC., et al., Appellees.**

No. 19338.

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1965.

Certiorari Denied May 17, 1965.
See 85 S.Ct. 1536.

John R. Forde, Jr., Walnut Creek, Cal., for appellant.

Kenneth L. White, Hildebrand & McLeod, Oakland, Cal., for appellees.

Before MADDEN, Judge of the Court of Claims, and BARNES and KOELSCH, Circuit Judges.

MADDEN, Judge:

The appellant, hereinafter called plaintiff, sued the appellee, hereinafter called defendant, in the United States District Court for the Northern District of California, Southern Division. That court had jurisdiction because of the diversity of citizenship of the parties. That court granted summary judgment in favor of

the defendant, and the plaintiff has appealed to this court from that judgment.

The suit is for money which, the plaintiff claims, the defendant owes him on a policy of insurance issued to him by the defendant in 1939. The defendant is a labor union, and one of its activities is to furnish to members of the union, in consideration of the payment of specified premiums, certain kinds of life, accident and health insurance. In 1939 the plaintiff was a brakeman on the Pennsylvania Railroad and a member of the defendant union. He applied for and the defendant issued to him the "certificate" or policy of insurance upon which this suit is based.

The plaintiff's policy, in its Parts One and Two, provided for payments of specified sums to the insured if he, by accident, suffered certain named injuries, the loss of both eyes, the loss of one foot, etc., being examples of those coverages. Then in Part Four, the policy provided, in pertinent part:

"If such injuries, described in the insuring clause, do not result in any of the above mentioned specific losses but shall * * * wholly and continuously disable the member for one day or more, and so long as the member lives and suffers said total loss of time, the Brotherhood will pay, beginning with the eighth day of such disability, a monthly indemnity at the rate of the monthly benefit provided, not exceeding twenty-four months."

The monthly benefit was $100 per month.

Effective on the same date as the policy itself the defendant issued to the plaintiff, for an additional consideration, its "Lifetime Indemnity Rider" providing that the monthly payments would be made during the lifetime of the insured, if his disability continued that long. Also on the same day, for a further additional premium, the defendant issued to the plaintiff a "Waiver of Premium Rider" providing that no premiums should be payable on the policy during a period of total disability for which the insured was drawing benefits.

On September 7, 1945, the plaintiff, while serving as a brakeman on the Pennsylvania Railroad, suffered an injury to his left knee. The injury was not, at the time, disabling, and the plaintiff continued to work as a brakeman until June 28, 1946, at which time the injury to his knee became totally disabling. The total disability has been continuous down to the date of the filing of this suit on February 11, 1963. That would seem to mean that the defendant should have paid the plaintiff $100 per month for 17 years. In fact the defendant has paid the plaintiff, during the 17 years, only $2,003.34, and has also received premiums from the plaintiff during the 17 years, in spite of the waiver of premium rider referred to above.

The defendant says that the plaintiff is not entitled to recover anything, and, as we have seen, its motion for a summary judgment in its favor was granted by the District Court. We now discuss the reasons which the defendant urges in support of its position. Its first two points, as stated in its brief, are:

"1. Plaintiff did not give written notice to defendant as required by the insurance contract.

"2. Plaintiff did not furnish defendant with affirmative proof of loss as required by the terms of the insurance contract."

There is no merit in either of these contentions. As we have seen, the plaintiff was injured on September 7, 1945. He continued to work until June 28, 1946. On July 8, 1946, he notified the defendant of his injury. Beginning some time before August 5, 1946, there ensued correspondence between the plaintiff and the defendant's General Secretary and Treasurer, in which no objection whatever was made by the defendant on the ground of any lack or lateness of notice, or failure to furnish any kind of proof. The defendant caused an investigation to be made by a professional investigating agency, decided that the claim was meritorious, that the disability had commenced on June 28, 1946, and that disability benefits would be paid. It so ad-

vised the plaintiff by a letter on August 14, 1946, and paid him $100 a month until, 20 months later, it decided to discontinue the payments. That discontinuance will be discussed hereinafter.

The events described above demonstrate a clear case of waiver by an insurance company of lack of notice and failure to prove loss. The law on the subject is tersely summarized in Section 554 of the California Insurance Code, which says:

"Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by an act of his, or if he omits to make objection promptly and specifically upon that ground."

The defendant's fourth ground of defense is stated by it in its brief as follows:

"4. Plaintiff's disability did not occur within the time period provided in the insurance contract."

In our quotation hereinabove of Part Four of the policy, we showed an omission of some language not pertinent to the point then under discussion. In the omitted language, Part Two says that if such injury shall "within ten days from the date of accident," wholly and continuously disable, etc., the defendant will pay, etc. If the defendant had contended in 1946, as it contends in 1965, that a disability first effective in June, 1946, resulting from an injury which occurred in September, 1945, was not covered by its policy because of the ten-day clause quoted above, a court would have had to decide whether the so-called "process of nature" doctrine would apply in the interpretation of the policy. That doctrine is discussed in 45 C.J.S. Insurance § 901c, and cases from Nebraska, Texas, Washington, Kentucky, and a Federal District Court in Missouri are cited applying the doctrine, and no contrary authority is cited. The defendant in its brief says that the doctrine is applicable only to the spread of infection or disease or deterioration certain to occur. The defendant cites no authority for such a restriction of the doctrine and no reason for it occurs to us.

We do not, however, have the task of interpreting this language of the defendant's policy. The defendant itself interpreted it. With full knowledge that the plaintiff's injury had occurred many months before he had ceased to work, it accepted, investigated and processed his claim, designating it in all of its letters to him as a disability situation, paid him disability payments for 20 months, and waived the payment of premiums for those months pursuant to the rider providing for waiver of premiums during disability. The defendant cannot expect from the plaintiff or a court an interpretation of its writing more favorable to it than its own interpretation.

We still have for consideration the defendant's third contention. It is:

"Plaintiff's action is barred by the terms of the contract since it was not brought until long after five years from the expiration of time within which proof of loss is required by the contract of insurance."

Provision 13 of the "Standard Provisions" of the plaintiff's policy says that no action at law or in equity shall be brought on the policy unless brought within five years from the expiration of the time within which proof of loss is required by the policy.

We do not stop to discuss the somewhat awkward language of this provision, because it is evident that, whatever might be taken as the starting point for the five years, the five year period has been greatly exceeded, and that the plaintiff cannot escape the bar of this limitation unless he has some valid reason why the limitation provision should not be applied to him.

As we have seen, the defendant in August, 1946, determined that the plaintiff was disabled and began to pay him $100 per month disability pay. These payments continued until March, 1948, at

which time the defendant wrote the plaintiff as follows:

' "This is the final payment due under Part Eight of your Certificate. No further payment can be made for any disability due directly or indirectly, wholly or in part, to your present disability, or for any other disability while this present condition disables you. Therefore, if you desire to cancel your Certificate, return it in the enclosed self-addressed, stamped envelope with a signed letter so stating."

The defendant's letter contained statements and assumptions which were erroneous, fundamentally and dangerously erroneous. Part Eight of the policy, to which the letter referred and which the defendant applied in cutting off the payments to the plaintiff, had nothing whatever to do with the plaintiff's situation. Part Eight covers disabilities due to sickness, and nothing else. The defendant never thought the plaintiff was sick. Part Eight, the sickness provision, also provided for payments of $100 per month but limited the payments to 24 months, and there was no rider, such as there was applying to Part Four, the injury provision, extending payments for life if the disability continued for life. The waiver of premium rider did not apply, in the case of sickness, beyond 24 months because it applied only to periods during which the insured was drawing disability benefits.

■ As we have said, the plaintiff did not bring this suit until much more than five years had elapsed after the defendant discontinued its payments to him. The plaintiff says that, in spite of this lapse of time, the period of limitation provided in his contract has not run against his claim because, in the circumstances, the defendant is estopped from relying on that provision. We agree with the plaintiff.

The certificates of insurance issued by the defendant were available only to members of the defendant union, the Brotherhood of Railroad Trainmen. The riders attached to them were signed by A. F. Whitney, the President of the Union, and by the General Secretary and Treasurer of the Union. The correspondence which the plaintiff had with the defendant with regard to his injury was answered by the General Secretary and Treasurer in friendly, man to man letters which addressed the plaintiff as "Dear Sir and Brother," and ended "Fraternally Yours." We think it is only realistic to suppose that this plaintiff, this brakeman, reposed more trust and confidence in President Whitney and the General Secretary and Treasurer of his union than in anyone else in the world. He would have gone on strike, if President Whitney told him to do that, and would have immediately returned to work if President Whitney told him to do that. The defendant union, in operating its insurance department, did not purport to entrust it to underlings whose statements and actions even a brakeman might question. The letters to this brakeman came from the General Secretary and Treasurer, the highest officer in the union, after President Whitney. We think it did not show an inexcusable lack of due care for his own interests, on the part of the plaintiff, that he did not suspect that his union was doing him wrong and take his papers to a lawyer. He had been told that his case came within Part Eight of his insurance certificate, and that he had been paid all that he was entitled to receive. These statements were inexcusably erroneous on the part of the union, and we see no equity in permitting the union to profit by its own wrong. The equitable doctrine which we are applying is illustrated in the case of Tyra v. Board of Police and Fire Pension Commissioners, 32 Cal.2d 666, 197 P.2d 710, in which Justice Shenk, for a unanimous court, wrote that an erroneous statement by the Board to a fireman that he could not draw a pension while he was receiving Workmen's Compensation for an injury, estopped the Board from later pleading the Statute of Limitations in the fireman's suit for his pension. The 1964 decision in the case of Phillis v.

City of Santa Barbara, Cal.App., 40 Cal. Rptr. 27, is another example of the application of this doctrine of estoppel in an appropriate situation.

Our conclusion is that the District Court was in error in granting the defendant's motion for summary judgment, and we reverse that judgment.